Walborn et al. *v.* Epley, Appellant.

Argued December 15, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*Charles H. Weidner,* with him *Stevens & Lee,* for appellant.

*James W. Stoudt,* with him *Body, Muth & Rhoda,* for appellees.

OPINION BY STADTFELD, J., February 28, 1942:

This is an action in trespass commenced in the Court of Common Pleas of Berks County to recover the value of a truck and contents destroyed in a fire which followed a collision.

Early in the morning of January 6, 1939 a truck owned by the plaintiff, J. H. Walborn, became disabled on State Highway Route No. 22 approximately seventy-five to one hundred feet west of an underpass under a railroad in West Hamburg. The truck was headed west and was parked upon an ascending grade on the right hand side of the road. It projected over the highway to within about one foot from the center line of a two lane highway. Plaintiff's employees placed one lighted kerosene flare about one hundred feet west of the truck near the crest of the ascent in the road, another about one hundred feet to the east of the truck and slightly east of the underpass, a third a few feet ahead of the truck and a fourth a few feet back of the truck. All four flares were placed near the center line of the highway, and the truck's clearance lights were lighted. Shortly thereafter defendant's truck, traveling in an

easterly direction, passed another truck on the crest of the hill and in so doing crossed the center line of the highway. Before it could be returned to its own right hand side of the road, it crashed into the plaintiff's truck. The collision caused plaintiff's truck to roll backward down the hill and when the plaintiff's truck reached the underpass, the defendant's truck again crashed into it and the two trucks completely blocked the underpass. As a result of the collision the gasoline tank on plaintiff's truck, which contained about 60 gallons at the time of the collision, was broken and gasoline ran out into a gutter at the side of the road and down the gutter east of the underpass. Shortly thereafter a fire broke out which completely destroyed plaintiff's truck and its contents. There was evidence that about fifteen or twenty minutes after the collision some unknown person picked up a burning flare and waved it from side to side in an apparent effort to warn an approaching automobile traveling west, with its lights burning; that in waving the flare "balls of fire" dropped off and ignited the gasoline in the gutter; and that the fire followed the gasoline in the gutter back to plaintiff's truck.

At the trial the plaintiff Walborn amended his statement of claim so as to make the Pennsylvania Manufacturers Association Casualty Insurance Company a party plaintiff for the reason that the added plaintiff was entitled to subrogation, having paid to plaintiff Walborn the amount of $1,025, to cover the destruction of his truck by fire.

The jury returned one verdict for both plaintiffs in the amount of $1,112, which was their claim in full, consisting of loss of truck, $1,025, loss of pretzels and cans in truck, $68, loss of rack, $10, and $9 for gasoline.

The defendant filed motions for new trial and for judgment n.o.v. which were discharged by the court below in an opinion by SCHAEFFER, P. J. The defendant has appealed from this decision.

420

Appellant contends that the court below should have ruled as a matter of law that the fire was the result of a superseding cause for which defendant was not liable. He contends that the collision was not the proximate cause of the fire and the loss caused by it; the fire he says was caused not by the collision but by the superseding act of a third intervening party. There is no dispute about the fact that after the two trucks had come to rest wedged in the underpass, gasoline escaped from plaintiff's truck and flowed down the road. George Dunkle, one of plaintiff's employees, testified that in the middle of the two-lane concrete road there was a crack, or joint—a long narrow depression. He surmised that gasoline "got in the middle of the road and that was burning." He stated that this burning started twenty-five feet from the truck. He denied that any one did wave or could have waved one of the lighted kerosene flares for the reason that as they had been burning "an hour or so," it was so hot that "they would burn their fingers off." Mr. Johnson, the keeper of the gas station nearby, helped to place the flares and states that the one to the east was, he thought, 200 feet from the underpass. W. T. Waddell, the helper on defendant's truck, called by plaintiff, testified that following the accident the flames "didn't start right at the truck; the flames started at the gutter from the gasoline that had run at the gutter and (the flames) followed back to the pretzel (plaintiff's) truck." He further says that the gasoline became ignited up the road towards the filling station. He estimates that the fire started about 75 feet to the east of the damaged trucks. He says there was no fire at the trucks before the flames from the burning gasoline reached them and that at the time the fire ran up the gutter, he heard some one say, "Put that torch down."

Defendant's driver, Stauffer, testified that, after the trucks came to rest, he helped to get Thornton, driver of plaintiff's truck, out of the truck and took him to

the filling station. When about there, he noticed a car coming from the east and he left Thornton and endeavored to stop that car by waving to the driver. Then, he says, he looked towards the underpass (west-wardly) and "noticed somebody waving a flare or kerosene torch in the air and that just as he dropped it on the highway, the fire started." He could not identify the man who, he says, picked up the flare. He fixes the place where the fire started as the gutter 50 feet to the east of the underpass. He also testified that balls of fire dropped off the torch or flare when it was waved.

Allen J. Bresley, who was driving a large motor transport along the same highway and saw the collision, testified that he was standing at the underpass when the fire started. He heard and smelled gasoline drip-ping from the damaged trucks. This gasoline, he says, ran down the gutter in "a pretty fast stream." Then, he says, "I looked down the road and I saw a chap wav-ing a flare. I yelled at him to put that flare down. He set it down and it turned over ...... and rolled into the gas that was going down the gutter and goes suddenly up." That, he states, occurred 15 or 20 minutes after the collision. This witness further says that burning flares do not become so hot that a person could not pick them up.

It is, therefore, undisputed that the fire which caused the principal portion of plaintiff's damage did not originate in the impact of the collision, but was com-municated to the trucks some time after the collision had occurred by the stream of gasoline flowing from the trucks and that the stream of gasoline became ig-nited some distance—25, 50 or 75 feet—away from the trucks.

The actual cause of the initial ignition of the gaso-line is not as well established. It is the contention of defendant based upon the testimony of at least two witnesses that the fire was caused by the act of some

unknown person in picking up and waving the burning flare which plaintiff's employees had placed to the east of the underpass; this the plaintiff does not expressly admit. One of the latter's witnesses, Waddell, however, testified to having heard some one shout, "Put that torch down." Another of plaintiff's witnesses, Bresley, denied that the burning flare became too hot to be picked up in the bare hand.

The defendant has produced evidence which is uncontradicted that just before the fire started another automobile came from the east upon the highway which was blocked by two trucks. Defendant's driver, Stauffer, states that he endeavored to stop this car by running out from the filling station and waving his hand and arm, but the car continued past him. Then it was, he says, that he looked towards the wrecked trucks and saw the unknown third person waving the lighted flare. The fair inference is that the intention of this unknown person was to warn the driver of the oncoming car of the fact that the highway ahead of him was blocked.

The defendant, contending that the fire was caused by the act of a third person in picking up, waving and dropping the lighted flare, argues that this act was an intervening superseding independent cause of the fire for which the defendant is not liable. In other words, defendant insists that his negligence was not the natural, primary and proximate cause of the fire. Accordingly defendant requested the court to reduce the amount of the verdict by eliminating the damages attributable to the fire.

This contention is based upon the idea that a third person caused the fire by picking up one of the lighted flares. That, however, is not the only conceivable cause of the fire. For one of plaintiff's witnesses, George Dunkle, testified that the gasoline ran down the middle of the road—between the joints of the concrete paving —and there became ignited. There was other testimony

that one of plaintiff's flares was placed to the east of the underpass in the middle of the road. It is not entirely inconceivable that the stream of gasoline, as stated by the court below, reached that flare and became ignited through its fumes and vapors reaching the open flame.

Under the testimony introduced by the plaintiff, the fire was caused by the stream of gasoline or by vapors therefrom coming in contact with the lighted flare. If the fire originated in this manner, there was no intervening force involved, and the fire resulted directly from the negligence of the defendant's employee. The lighted flare on the highway which was visible to defendant's employee, the rain and the wet highway were all pre-existing conditions. The release of the gasoline, a natural and probable result of the collision, caused by the active negligence of the defendant, resulted directly in the fire. There was thus a continuous and unbroken chain of events leading directly from the negligence of the defendant to the fire, with no intervening force whatsoever. The Restatement of Torts, Vol. 2, Section 441, defines an intervening force as one which "actively operates in producing harm to another after the actor's negligent act or omission has been committed."

The actual cause of the initial ignition of the gasoline was under the testimony a question to be decided by the jury. If the stream of gasoline reached the flare and became ignited through its fumes and vapors reaching the open flame, no act of a third person being involved, the law governing the defendant's liability is well settled.

In the case of *Gudfelder v. Railway Co.*, 207 Pa. 629, 57 A. 70, burning naptha carried through a sewer resulted in an explosion causing injury to the plaintiff, and recovery against the defendant was allowed. There, as here, the fire was a natural and foreseeable consequence of the negligence of the defendant. In *Pitts-*

*burgh F. & I. Co. v. Dravo C. Co.*, 272 Pa. 118, 116 A. 147, the defendant's employee permitted a burning stick to come into contact with the surface of the Ohio River, upon which a large quantity of oil was floating. The resulting fire was communicated to the plaintiff's wharf, which was destroyed. The Supreme Court held that if in throwing the burning stick upon the oil, the result that followed must have been foreseeable not only to be possible but also probable and natural, the defendant was liable. In the case at bar it is not only foreseeable but probable and natural that when two large trucks collide, there will be an escape of gasoline and a fire is likely to ensue, especially if there is an open flare nearby.

The court below also submitted to the jury the question whether the third person's act, even though negligent, was normal or extraordinary under the circumstances, charging that if the third person's conduct be found to be not the normal reaction to the situation, but extraordinary it must be considered a superseding cause which would relieve the original tort-feaser of liability. In the instant case, defendant's negligence caused (1) plaintiff's and defendant's trucks to be disabled and (2) a stream of gasoline to leak from them.

If the flare was waved, it was waved as a last resort by someone who realized that the oncoming motorist did not comprehend the situation and was likely to drive into the trucks which blocked the underpass. If this had happened, the consequences might have been even more serious than they already were. The appellees contend that the act of this third person in waving the flare was the natural act of a person to avert threatened danger created by the negligence of the defendant, after the defendant's witnesses themselves had attempted unsuccessfully to warn the motorist of the danger ahead.

In the Restatement of Torts, Section 443, it is stated:

"An intervening act of a human being or animal which is a normal response to the stimulus of a situation created by the actor's negligent conduct is not a superseding cause of harm to another which the actor's conduct is a substantial factor in bringing about." In the comment under this section, the test of whether the conduct is normal is made to depend upon whether the court or jury looking at the matter after the event would regard the intervention as extraordinary. The fact that the third person is incompetent to give safe aid does not relieve the actor from liability unless his incompetence is so great that an ordinary person would realize the grave danger of meddling with the situation. Section 445 states: "If the actor's negligent conduct threatens harm to another's person, land or chattels the normal efforts of the other or a third person to avert the threatened harm is not a superseding cause of harm resulting from such efforts."

In the case at bar, the efforts of an unknown third person to save an oncoming automobile and driver from harm threatened by the negligence of the defendant cannot be considered a superseding cause but merely the normal efforts of a third person to avert threatened harm. The cases cited in the Pennsylvania annotations to this section of the Restatement are in accord with the principles stated.

In *Koelsch v. The Philadelphia Co.*, 152 Pa. 355, 25 A. 522, where the defendant was negligent in permitting its gas main to fall into disrepair with the subsequent result that gas leaked into the cellar of the plaintiff, the act of a third person who with knowledge of the presence of the gas lighted a match which caused an explosion did not constitute a superseding cause, and the negligence of the defendant was held to be the proximate cause of the damage to the plaintiff.

The real test in these cases is as stated by Mr. Justice MAXEY in *Welser et al. v. United Gas Improvement Co.*, 304 Pa. 227, 231, 155 A. 561: "The long-established test

of proximate cause is whether the facts constitute a continuous succession of events so linked together that they become a natural whole, or whether the chain of events is so broken that they become independent and the final result cannot be said to be the natural and probable consequence of the primary cause: *Thomas v. C. R. R. of N. J.*, 194 Pa. 511, 515; *Stemmler v. Pittsburgh*, 287 Pa. 365."

Appellant contends that plaintiffs-appellees had the burden of differentiating between any damage caused by the collision and the fire, and that the jury should have been so instructed. The court below properly instructed the jury that if they should find that the defendant's negligence was not the proximate cause of the fire, they should return a verdict for the plaintiffs for a nominal amount. In view of this instruction and of the fact that the damage to the cargo of the truck was caused by the fire, the jury in including as its verdict damages for the destruction of the cargo must have found that the defendant's negligence was the proximate cause of that damage.

The very able opinion of the trial judge fully justifies its rulings and judgment entered on the verdict.

The assignments of error are overruled and judgment affirmed.