28 N.J. Super. 210 (1953)
100 A.2d 325
SOMERSET CRUSHED STONE, INC., A CORPORATION, PLAINTIFF-APPELLANT,
v.
EXPLOSIVES SALES CO. OF N.J., INC., A CORPORATION AND E.I. DUPONT DENEMOURS AND COMPANY, A CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1953.
Decided November 6, 1953.
*212 Before Judges EASTWOOD, JAYNE and FRANCIS.
Mr. Daniel G. Kasen argued the cause for the plaintiff-appellant (Messrs. Kasen, Schnitzer & Kasen, attorneys; Mr. Theodore W. Geiser, on the brief).
Mr. Mark A. Sullivan, attorney for defendant-respondent Explosives Sales Co. of N.J., Inc., argued the cause.
Mr. Thomas L. Morrissey argued the cause for the defendant-respondent E.I. duPont deNemours and Company (Messrs. Carpenter, Gilmour & Dwyer, attorneys; Mr. Milton A. Dauber on the brief).
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
In May, 1950 plaintiff, operator of a stone quarry in Bernardsville, New Jersey, agreed to purchase its blasting agents from the defendant Explosives Sales Company of New Jersey, local agent for defendant E.I. duPont deNemours and Company, manufacturer of the blasting agents, and under the terms of the agreement the defendant would supervise the preparation for and the actual blasting operations at plaintiff's quarry.
The parties operated under this agreement until June 7, 1950, when a "runaway blast" occurred, allegedly due to *213 defendants' negligent conduct. Thereafter, by direction of a Deputy Director of the New Jersey Department of Labor and Industry, plaintiff's quarrying operations were first suspended and then severely restricted.
Plaintiff instituted an action against defendants to recover damages allegedly caused by the negligence of defendants, which proximately resulted in the interruptions of plaintiff's quarrying operations. Defendants' answer denied the alleged negligence, and they obtained answers from plaintiff to interrogatories submitted to it and the deposition of Deputy Director of the Department of Labor and Industry, George C. Krueger.
On motion of the defendants the trial court determined from the complaint, pretrial order, plaintiff's admissions in interrogatories and the deposition of Deputy Director Krueger, that as a matter of law plaintiff's claimed damages were not proximately caused by the alleged negligence of the defendants, "but that such damages, if any, were instead caused solely by the independent, intervening and superseding conduct of the Deputy Director, State of New Jersey, Department of Labor and Industry." Whereupon, the trial court denied the plaintiff's motion to amend the complaint and entered summary judgment in favor of the defendants and against the plaintiff, from which judgment plaintiff appeals.
The plaintiff asserts that the pivotal point in this case is the "proximate cause" of plaintiff's injury and damage; that that issue is a factual matter in controversy; that the conduct of the Deputy Director is not such an independent intervening act as would operate to relieve defendants of liability to the plaintiff, and that the trial court, therefore, erred in entering a summary judgment.
The Explosives Company argues that the damages complained of are consequential, stemming from the suspension and restriction of its operation by the deputy director; that there is no indication of the basis of his authority so to do and that the resulting damages are unconnected with any negligence on its part.
*214 The duPont Company contends that its alleged negligence was not the proximate cause of plaintiff's claimed damages, but that they flowed from a wholly independent cause, to wit, the intervening action of the Department of Labor and Industry, for which it is not responsible; that the suspension and the restrictive order issued by the Deputy Director, Department of Labor and Industry, were not preceded by factual findings, were illegally issued and invalid; that, if the action of the Deputy Director be considered lawful, plaintiff's damages are not legally compensable since they would flow from its inability to operate profitably in compliance with the law; that the pleadings, deposition and answers to interrogatories show palpably that there is no genuine issue of fact and that the trial court properly granted defendants' motion for summary judgment.
"* * * The judgment or order sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show palpably that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law. * * *" R.R. 4:58-3.
The dispositive question projected by this appeal is whether the pleadings, interrogatories and deposition exhibited by the record raise a genuine issue of a material fact. Templeton v. Scudder, 16 N.J. Super. 576 (App. Div. 1951); Stacy v. Greenberg, 9 N.J. 393, 401 (1952).
A review of the pleadings reveals that the plaintiff alleges its damages were caused by defendants' negligent conduct causing a misblast on June 7, 1950. The interrogatories present statements of alleged negligent conduct by defendants to plaintiff's damage, and Director Krueger's deposition indicates that the "misblast" played an important part in producing the suspension and restrictive orders. Mr. Krueger testified in part, as follows:
"Q. Do I understand then that your transfer of the entire operations from the east face of the old quarry to the south face in the western section of the quarry was prompted primarily by consideration as to the proximity of the east face to dwelling houses and *215 the hazards to private property in that area, in the east face area? A. I think my answer would have to be this: As I recall it that while those were the factors that supported that decision underlying the entire situation, it's still this primary mis-blast.
Q. Of June 7th? A. Of June 7th.

* * * * * * * *
Q. And do I understand from that that it is and was the feeling of your department that these steps taken following the June 7th incident that developed a system of rules and regulations by which Somerset might resume operations were not tied into a particular occurrence or mis-blast except as they fix the time at which you did these things? A. The mis-blast started the thinking on it.

* * * * * * * *
Q. And in what respect had the law been violated when you directed the quarry be closed after the incident of June 7, 1950? A. The person who shot off the blast didn't have a permit.
Q. Who was the person who shot off the blast? A. Hall."
It was developed that Hall was a duPont employee and his company had been notified of Hall's lack of license both before and after the incident of June 7, 1950. Continuing Mr. Krueger's testimony, we quote the following pertinent excerpts:
"Q. And you closed the quarry because of the mis-blast of June 7, 1950, in order to determine what regulations, if any, would be necessary in order to bring about a safe and sound operation, isn't that so? A. Yes.

* * * * * * * *
Q. And am I correct in saying that as a result of the information you acquired from every source you are satisfied that the blast of June 7, 1950, was due not to the condition of the quarry, but rather to the nature or conduct of the blast of that day?

* * * * * * * *
A. As I recollect it, I was guided primarily by the fact there was an incident, a misblast that required study and whatever resulting corrective measures would emanate from such a study, and I think I am correct in saying that the nature or the condition of the quarry, and the conduct of the blast at that time didn't enter into my thinking."
Our Rule 3:56-3 (R.R. 4:58-3) is taken from the Federal Rule 56 (c), and it has been held that summary judgment
"should be granted only where `no genuine issue remains for trial.' Chappell v. Goltsman, 186 F.2d 215, 218 (C.C.A. 5 1950). The *216 matter cannot be decided on the affidavits of the parties where the facts are in dispute or where conflicting factual inferences may be drawn from them. Arnstein v. Porter, 154 F.2d 464 (C.C.A. 2 1946)."
Mayflower Industries v. Thor Corp., 15 N.J. Super. 139, 155 (Ch. Div. 1951), affirmed 9 N.J. 605 (1952). In Templeton v. Glen Rock, 11 N.J. Super. 1, 3 (App. Div. 1950), it was further stated that:
"The requirement in our rule that the absence of any disputed material facts must appear `palpably' conforms with earlier state and actual federal practice. See Louis Kamm, Inc., v. Flink, 113 N.J.L. 582, 596 (E. & A. 1934); 2 Waltzinger, New Jersey Practice, p. 893 (1949); 48 Col. L. Rev. 780 (1948). In considering a motion for summary judgment the court is `quite critical of the papers presented by the moving party, but not of the opposing papers' (Hoffman v. Partridge, 84 U.S. App. D.C. 224, 172 F.2d 275, 276 (D.C. Cir. 1949)) and will grant it only upon clear showing. Mitchell v. Wrightstown Community Apartments, Inc., 4 N.J. Super. 321, 326 (App. Div. 1949)."
and the facts must not only be undisputed, but the inferences to be drawn from these facts must be such that fair-minded men ought not to differ about them. Smith v. Public Service Corporation, 78 N.J.L. 478 (E. & A. 1910); Podolsky v. Sautter, 102 N.J.L. 598 (E. & A. 1926); Parave v. Public Service Interstate, &c., Co., 109 N.J.L. 155 (E. & A. 1932); Turck v. Kaywal Realty Co., 3 N.J. Super. 165, 168 (App. Div. 1949); Tissot v. Flashner Realty Co., 1 N.J. 529 (1949).
It must be conceded that "proximate cause" is the important factor to be passed upon in deciding the issue presented by this appeal. In the case of Batts v. Joseph Newman, Inc., 3 N.J. 503 (1950), where the defendant's negligence resulted in the tank lying in a busy street, the Supreme Court discussed the question of proximate cause and held that but for that negligence, the subsequent events leading to the plaintiff's injuries would not have occurred; that the concurring cause, the striking of the tank by another truck could not have taken place but for defendant's negligence, and that the trial court, therefore, properly refused *217 to nonsuit or direct a verdict for the defendant. See Greenleaf Evidence, sec. 256.
The Court of Errors and Appeals in the case of Smith v. Public Service Corporation, supra, in enunciating the established rule of law to be that the damages chargeable to a wrongdoer must be shown to be the natural and proximate effects of his delinquency, held that:
"The term `natural' imports that they are such as might reasonably have been foreseen  such as occur in an ordinary state of things; the term `proximate' indicates that there must be no other culpable and efficient agency intervening between the defendant's dereliction and the loss. Wiley v. West Jersey Railroad Co., 15 Vroom 247; Delaware, Lackawanna and Western Railroad Co. v. Salmon, 10 Id. 299."
As stated by Professor McLaughlin, in the Harvard Law Review, Article 39, December 1925 issue, 149, 155:
"The entire doctrine assumes that the defendant is not necessarily to be held for all consequences of his act."
The generally accepted rule is that there must be some reasonable limitation of liability for the commission of a tortious act. A wrongdoer is not liable for all possible consequences, but his responsibility in damages is "only for the natural and probable consequences of his negligent act." Rickards v. Sun Oil Co., 23 N.J. Misc. 89 (Sup. Ct. 1945). The Supreme Court in the Rickards case made the further pronouncement:
"Ultimate result must be such that a reasonable man should anticipate in the natural order of things. 15 Am. Juris. 471 and 472. Such consequential injuries must result as according to the common experience of mankind are likely to result from the act. Consequences that may be reasonably expected to result under ordinary circumstances from such misconduct. Watson on Damages, page 2. The test of liability to the particular person is whether injury to him ought reasonably to have been anticipated. * * *"
The defendants argue that plaintiff's entire claim is for a loss of profits suffered as the direct result of the *218 Deputy Director's "cease blasting" order and restrictive operational directives. DuPont asserts "it must be conceded in limine that regardless of defendant du Pont's conduct, all of plaintiff's claimed damages were the direct, the natural, the proximate consequence of deliberate, considered action taken by the Deputy Director, New Jersey State Department of Labor and Industry, on dates long subsequent to the June 7, 1950 misblast"; and that the order and directives were issued without lawful authority and are invalid. Notwithstanding these contentions, we are still faced with the factual question as to whether the cessation order and restrictive directives were the "probable," "natural" or "foreseeable" consequence of defendants' negligence in causing the "misblast." Issues of probability are invariably resolved by a jury. Flexmir, Inc., v. Lindeman & Company, 8 N.J. 602 (1952). If the defendants' contention were held to be dispositive of the issue, then it would seem to us that the rule that prevails in such cases as malicious prosecution, false arrest and malicious abuse of process would be impaired and a plaintiff might well be precluded from recovering damages that flow from the issuance of the warrant, the consequent arrest and confinement, and would be confined merely to the damages caused by the unfounded complaint, maliciously made, upon the basis of which the issuance of the warrant, the arrest and confinement ensued. In the case of Mayflower Industries v. Thor Corp., supra, the problem presently under consideration is clearly and cogently discussed, to wit:
"This is a tort action and if the right of action is established, the damages recoverable would be those which proximately flowed from the plaintiff's wrongdoing. Of course, if any independent, culpable agency intervened between the tortfeasor's act and all or some of damage, the recovery would be reduced accordingly. Whether the conduct of counsel in advising the defendant to remove the action to the federal court, constitutes such a culpable agency, is a factual question which is not presently capable of determination. This must await the development of the full facts at the trial. It seems sufficient at this time to pose the problem: If a wrongdoer, who wilfully injures another, is liable for the full consequences which flow to the injured person, even though the consequences are *219 aggravated by a mistake of an attending physician (chosen with reasonable care), should plaintiff be relieved in this case of part of the damages consequent upon its wrongdoing, because acting on advice of competent counsel, which advice turned out on appeal to be erroneous, defendant caused the removal of the proceedings to another jurisdiction and thus lengthened the period of the restraint?
Is the liability of the wrongdoer any different because a physician is an independent contractor and an attorney is the agent of the client, where the attorney acted in good faith and was guilty of no negligence?"
Cf. Welser v. United Gas Improvement Co., 304 Pa. 227, 155 A. 561 (Sup. Ct. 1931).
In the instant case, in summarizing the issues, one of the factual issues is whether the closing of the plaintiff's operational activities and subsequent order of the Department division restricting future operations were the "natural," "probable" or "foreseeable" consequence of defendants' negligence or whether the director's action was entirely unrelated thereto. An examination of Mr. Krueger's deposition discloses that his testimony on that question was not harmonious. At one time he indicated that his closing and restrictive orders were the result of the "misblast," but at another time, he indicated that the "misblast" only started his thinking with respect thereto and that his action was not based entirely on the "misblast." Such conflicting testimony on an important aspect of the case surely must be resolved by a jury. Another factual question is not whether all of the damages claimed to have been suffered by the plaintiff resulted from the cessation of their operations and later restrictive order of the Deputy Director, but whether all or some portion thereof could be properly assessed against the defendants as consequential damages arising from the negligent act of the defendant's employee. Such a question is clearly factual in nature and could not be determined by the trial judge on a motion for summary judgment.
Further, the complaint (par. 6) appears broad enough to comprehend a claim for physical damage to the quarry resulting from the misblast, and such a claim is set out specifically in answers to interrogatories. Consequently, under *220 our liberal pleading practice, if the trial court entertained any doubt as to whether the property damage allegation was within the scope of the complaint, the suggested amendment should have been allowed.
We think that it was error for the trial court to have granted defendants' motion for summary judgment and accordingly the judgment is reversed.