# Morse v. Jamison Contractors Inc.

C.P. of Montgomery County, no. 96-22348.

*Paul Drucker,* for plaintiff Jerome Morse.
*James Gillepsie,* for defendant Jamison Contrs. Inc.
*Leah Perry,* for defendant Buttonwood Co. Inc.
*Thomas Delevie,* for defendant United States Roofing Corp.
*Jay Harris,* for defendants Lower Merion School District, Day Care Association of Montgomery County Inc. and Ardmore Child Care Center.

SUBERS, *J.,* August 13, 1998—This opinion is written in accordance with the order of the Commonwealth Court which permitted an appeal from this court's order

entered on April 7, 1998 denying the motions for judgment on the pleadings filed by additional defendants, Lower Merion School District and the Day Care Association of Montgomery County.

## FACTUAL AND PROCEDURAL HISTORY

The incident underlying this lawsuit occurred on July 28, 1994, when the decedent, Diane Morse, a day care teacher at Ardmore Child Care Center, was stalked and murdered by a mentally impaired woman named Arcelia Trumaine (Trudy) Stovall. Trudy was able to enter the school with a gun, search out Mrs. Morse and shoot her five times, resulting in her death. Mrs. Morse's husband, Jerome Morse, individually and as executor of the estate of Diane Morse, decedent, and as parent and guardian of Juree N. Morse, a minor, filed a complaint against defendants, Jamison Contractors Inc., Buttonwood Company Inc. and United States Roofing Corporation.[1] The complaint alleges that defendant, U.S. Roofing, was involved in roofing and related activities at the Ardmore Child Care Center and was given access to the bathrooms inside the building by leaving the back entrance door unlocked. Trudy Stovall entered the building through this back door. The plaintiff alleges that the negligence of the defendant, U.S. Roofing, in

---

1. This complaint was filed following entry of an order dated November 21, 1996, in the United States Court for the Eastern District of Pennsylvania, which granted a motion to dismiss a federal complaint that plaintiff had filed against the Lower Merion School District and Day Care Association of Montgomery County Inc. in connection with the same incident at issue here. Plaintiff's federal complaint was dismissed for failure to state a claim under the state-created danger theory of liability under 42 U.S.C. §1983, the federal civil rights statute. See *Morse v. Lower Merion School District,* 132 F.3d 902 (1997).

leaving the back door open caused the death of Diane Morse.

On January 16, 1997, U.S. Roofing filed a joinder complaint against the day care association and the school district alleging that the school district owned, operated and maintained Lower Merion High School in Ardmore, Pennsylvania, including the wing of that school, which was leased to the day care association for use as the site for the Ardmore Child Care Center. The joinder complaint alleges that the school district was statutorily and contractually obligated to provide a safe environment for Diane Morse, but it failed to do so by leaving the back door entrance unlocked, permitting an intruder to enter the building and shoot her. It further alleges that the school district and day care association should be primarily liable for any alleged negligence, and liable over to U.S. Roofing for any amount U.S. Roofing may be required to pay for its own negligence. In its answer and new matter to the complaint, the school district admits it owned and maintained the high school and that it leased the school's Ardmore wing to the day care association. The school district denies that it operated the Ardmore wing. The day care association admits it leased the high school's Ardmore wing for use as the Ardmore Child Care Center.

In its new matter, the school district, as a local agency, raised the affirmative defense of governmental immunity under 42 Pa.C.S. §8521 et seq. or 42 Pa.C.S. §8541 et seq. In its new matter, the day care association raises the affirmative defense that any cause of action against it is barred by the immunity provided to employers from any actions at law under the Pennsylvania Workers' Compensation Act, 77 P.S. §481. Both the school district and the day care association filed a motion for judgment

on the pleadings, which this court denied without prejudice to later bring a motion for summary judgment.

## DISCUSSION

"When considering the appropriateness of judgment on the pleadings, we are guided by the following principles summarized in *Del Quadro v. City of Philadelphia,* 293 Pa. Super. 173, 437 A.2d 1262 (1981):

"It is fundamental that a judgment on the pleadings should not be entered where there are unknown or disputed issues of fact. . . . In conducting this inquiry, the court should confine its consideration to the pleadings and relevant documents. . . . Since a motion for judgment on the pleadings is not a motion for summary judgment, no affidavit or depositions may be considered, nor is any matter before the court except the pleadings. *Id.,* 293 Pa. Super. at 176-77, 437 A.2d at 1263. (citations omitted)" *DiAndrea v. Reliance Savings and Loan Ass'n,* 310 Pa. Super. 537, 543-44, 456 A.2d 1066, 1069 (1983).

Furthermore, in reviewing the pleadings and relevant documents, "[t]he court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed . . . ." *Shirley by Shirley v. Javan,* 454 Pa. Super. 131, 134, 684 A.2d 1088, 1089 (1996). A party is entitled to judgment on the pleadings when its case is clear and free from doubt such that a trial would prove fruitless. *Kelly v. Nationwide Insurance Co.,* 414 Pa. Super. 6, 10, 606 A.2d 470, 472 (1992).

Under this standard, we hold that the motion for judgment on the pleadings by the school district is premature and should be denied at this stage of the proceedings. U.S. Roofing pled in its complaint at paragraph 7 that pursuant to paragraph 5 of the lease between

the school district and the day care association, the school district was obligated to maintain the building in which the child care center was located in a manner to permit the child care center to operate "without hazard either to the health or safety of the enrolled children." U.S. Roofing further pled at paragraph 8 that pursuant to paragraph 8 of the lease between the school district and the day care association, both parties agreed to cooperate to insure the compliance with all state and governmental requirements for safety. The safety of day care facilities is regulated by the Pennsylvania Code at 55 Pa. Code §3270.21,[2] 55 Pa. Code §3280.20[3] and 55 Pa. Code §3290.18.[4] The school district in its answer to the joinder complaint averred that it did not need to respond to the allegations of paragraphs 7 and 8 because U.S. Roofing failed to attach a copy of the lease in violation of Pa.R.C.P. 1019(h). However, writings that are in the possession of an opposing party need not be attached to a pleading, because in such instances, the reason for Rule 1019(h) is not present. *Leiby v. New Hampshire Insurance Co.,* 51 D.&C.2d 643 (1971); *Bloomsburg Mills Inc. v. Sordoni Construction Co.,* 14 D.&C.2d 551 (1957), *aff'd,* 401 Pa. 358, 164 A.2d 201 (1960); *Levin & Co. v. Oldsmobile Div. of General Motors Corp.,* 8 D.&C.3d 361 (1978). Here, the missing writing is a lease between the school

---

2. *Section 3270.21. General health and safety.*

Conditions at the facility may not pose a threat to the health or safety of the children.

3. *Section 3280.20. General health and safety.*

Conditions at the facility may not pose a threat to the health or safety of the children.

4. *Section 3290.18. General health and safety.*

Conditions at the facility may not pose a threat to the health or safety of the children.

district and the day care association, which is a document in the possession of the school district itself. Furthermore, the school district had the opportunity to object to the sufficiency of the pleading by filing preliminary objections to the joinder complaint and failed to do so. Therefore, for the purposes of this motion for judgment on the pleadings, we will accept U.S. Roofing's allegations pertaining to the lease provisions in paragraphs 7 and 8 of the joinder complaint. Thus, the school district was contractually obligated to provide a safe environment for the children at the day care facility. Furthermore, it is alleged the school district agreed to assist the day care association in complying with the regulations included in the Pennsylvania Code. The joinder complaint further alleges that the school district was negligent in that it was aware of and assisted in the unlocking each day and leaving unlocked the back entrance to the building, permitting Trudy Stovall to enter the building and shoot Diane Morse. The school district argues that regardless of these allegations of negligence, it is immune from liability because its conduct does not fall within any of the statutory exceptions to immunity. We disagree.

In its response to the motion for judgment on the pleadings, U.S. Roofing argues that liability must be imposed on the school district because the act by the school district falls within the real property exception to governmental immunity. Section 8542 of the Political Subdivision Tort Claims Act, 42 Pa.C.S. §8541 et seq. imposes liability on a local agency, such as the school district, where: (1) the damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available defense under section 8541, and (2) if the injury was caused by one of the eight negligent acts set forth in section 8542(b). We find that U.S. Roofing

satisfied the first element.[5] The next question is whether the negligence alleged falls within the real property exception to governmental immunity. The real property exception reads as follows:

"(3) *Real property.*—The care, custody or control of real property of others in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. As used in this paragraph 'real property' shall not include:

"(i) trees, traffic signs, lights and other traffic controls, street lights and street lighting systems;

---

5. Although the school district does not argue that the first element is not satisfied by U.S. Roofing Corporation's joinder complaint, we find that U.S. Roofing Corporation has stated a cause of action which could be maintained at common law against one not having the immunity defense for the same reasoning as set forth in *Mascaro* as follows:

"Under our case law and the Restatement of Torts, Second, we have held landowners liable for failing to take precautions against unreasonable risks that stem directly and indirectly from the property including the contemplated acts of third parties, whose crimes are facilitated by the condition of the property. *Ford v. Jeffries*[, 474 Pa. 588, 379 A.2d 111 (1977)]; *Anderson v. Bushong Pontiac Co. Inc.*[, 404 Pa. 382, 171 A.2d 771 (1961)]; *Kuhns v. Brugger*[, 390 Pa. 331, 135 A.2d 395 (1957)]; *Churbuck v. Union Railroad Company,* 380 Pa. 181, 110 A.2d 210 (1955); *McCarthy v. Ference,* 358 Pa. 485, 58 A.2d 49 (1948); *Nelson v. Duquesne Light Co.,* 338 Pa. 37, 12 A.2d 299 (1940); *Welser v. United Gas Improvement Co.,* 304 Pa. 227, 155 A. 561 (1931). Accordingly, appellees have stated a cause of action which could be maintained at common law against one not having the immunity defense, and thus satisfied the first requirement imposed by the statute at 42 Pa.C.S. §8542(a)(1). . . ." *Mascaro v. Youth Study Center,* 514 Pa. 351, 360, 523 A.2d 1118, 1122-23 (1987).

"(ii) facilities of steam, sewer, water, gas and electric systems owned by the local agency and located within rights-of-way;

"(iii) streets; or

"(iv) sidewalks."

Here, the act by the school district in leaving the back entrance to the school unlocked fits within the real property exception and the school district is not entitled to immunity.

The school district relies on the decision in *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987), to support its argument that the school district is immune from liability and argues that the real property itself must have caused plaintiff's injuries.[6] In *Mascaro*, plaintiffs sued the City of Philadelphia and its Youth Study Center, asserting that Claude Opher, a detainee at the youth center, a juvenile detention facility, escaped from the center because the city had negligently maintained the real estate (the center), thus facilitating his escape. Plaintiffs alleged that once Opher escaped, he broke into plaintiffs' home and burglarized it. Opher and his accomplice tied up Mr. and Mrs. Mascaro and their son. Opher took the Mascaros' daughter into her parents' bedroom where, after beating her, he raped

---

6. The school district also cites several cases that held that the language of the real property exception does not include an allegation that a school district failed to supervise its children. See *Messina v. Blairsville-Saltsburg School District,* 94 Pa. Commw. 100, 503 A.2d 89 (1986); *Usher v. Upper Saint Clair School District,* 87 Pa. Commw. 461, 487 A.2d 1022 (1985); *Robson v. Penn Hills School District,* 63 Pa. Commw. 250, 437 A.2d 1273 (1981). This case does not involve the supervision or lack of supervision of the children at the school. It involves the negligence of the school district in permitting access to the Ardmore Day Care Center without providing proper security.

and sodomized her. The rest of the family was forced to listen to her screams. Opher was convicted and sentenced to 50 to 100 years in prison. The court in *Mascaro* held: "the real estate exception can be applied only to those cases where it . . . facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability." *Id.* at 363, 523 A.2d at 1124.

We find *Mascaro* distinguishable from the instant case. In *Mascaro*, the rape and burglary occurred at the Mascaros' home, which was not under the control of the city. Here, the decedent was killed on the property owned and maintained by the school district, and the allegation of negligence is leaving the door unlocked/open, permitting anyone access to a facility which houses young children and failing to provide a safe environment for Diane Morse to perform her duties as a school teacher. Here, the Pennsylvania Code regulates the safety of these facilities for young children, and the school district contractually agreed to assist the day care association in creating a safe environment for the children.

Furthermore, the decision in *Mascaro* was revisited in a subsequent decision. See *Crowell v. City of Philadelphia,* 531 Pa. 400, 613 A.2d 1178 (1992). In *Crowell,* parents of a 3-year-old child killed in a head-on collision brought a wrongful death and survival action against the city and an intoxicated driver. The Supreme Court reversed the Commonwealth Court and held that a governmental unit can be subjected to liability despite a presence of an additional tort-feasor, where facts fall within a statutory exception and governmental unit's actions would be sufficient to preclude it from obtaining indemnity from another for injuries rendered to a third person.

In *Crowell*, the Crowell family was traveling west on University Avenue and defendant, Henry Lewis, was traveling east on University Avenue. The two cars approached a curve in the road. Facing Mr. Lewis' vehicle was a large directional arrow directing traffic to turn left. The directional arrow was wrongly placed, for the road turned to the right. Mr. Lewis followed the arrow, resulting in a head-on collision with the Crowell family. At the time of the accident, Mr. Lewis was legally intoxicated.

The jury found that the directional sign, incorrectly placed by a city employee, was a substantial factor in causing the accident. The Commonwealth Court granted immunity to the city, concluding that the city cannot be liable for any injury caused jointly with another tort-feasor, citing *Mascaro* for this proposition.

The Supreme Court reversed, stating this was an improper use of *Mascaro,* and held that liability could be imposed against the city as a joint tort-feasor because it was actively negligent in misplacing the directional arrow and this negligence was a substantial factor in causing the death of the Crowells' son. Similarly, in the instant case, the school district was allegedly actively negligent in failing to close, lock and/or adequately secure the building, which may have substantially contributed to the cause of the decedent's death.

Thus, the school district cannot be immune from liability by proving that the real property under its control was alone not responsible for the death of Diane Morse. In *Norwin School District v. Cortazzo,* a school district was not immune from liability although the real estate alone was not responsible for the plaintiff's injury when the plaintiff fell from a school merry-go-round and

a third-party joint tort-feasor was involved. See *Norwin School District v. Cortazzo,* 155 Pa. Commw. 432, 625 A.2d 183 (1993). Here, the school district can be held to be a joint tort-feasor with the other defendants for failing to lock the back entrance to the school, resulting in the death of a teacher.

Finally, the school district is not immune from liability due to the criminal nature of Trudy Stovall's conduct because the actions of Trudy Stovall may have been foreseeable. In *Crowell,* a third-party joint tort-feasor was convicted of drunk driving at the time of the occurrence. See *Crowell v. City of Philadelphia,* 531 Pa. 400, 613 A.2d 1178 (1992). The court held that because a third-party tort-feasor's criminal actions were foreseeable, his drunk driving did not rise to the level of a superseding cause, and the city was not insulated from liability on the grounds of superseding criminal conduct. *Id.*

As illustrated in *Crowell,* the school district cannot be immune from liability on the grounds that Trudy Stovall's conduct constituted superseding criminal activity. Here, it may have been foreseeable that an intruder would enter the day care facility and harm a person within that facility. As stated previously, the Pennsylvania Code regulates the operation of day care facilities, and these facilities must not pose a threat to the health and safety of the children within the facility. Furthermore, U.S. Roofing pled in its joinder complaint that the school district was aware of numerous occasions prior to this incident when security was breached.

At this stage of the proceedings, it is unsure what was known to the school district which may contribute to the foreseeability of Trudy Stovall's conduct and a motion on the judgment of the pleadings by the school

district is premature since the conduct of Trudy Stovall may have been foreseeable and, therefore, not a superseding criminal act.[7]

The next issue is this court's denial of the motion for judgment on the pleadings by the additional defendant, the day care association. As a general rule, the Pennsylvania Workers' Compensation Act, 77 P.S. §1 et seq., provides the exclusive remedy for employees who seek recovery for injuries sustained in the course of their employment. Here, the day care association argues that as the employer of Diane Morse, it is immune from liability under the Workers' Compensation Act. Section 481(a) of the Pennsylvania Workers' Compensation Act establishes workers' compensation as the exclusive remedy for any employee who suffers injury or death as defined in section 411(1) and (2), which provides in pertinent part:

"The term 'injury arising in the course of his employment,' as used in this article, *shall not include an injury caused by an act of a third person intended to injure the employee because of reasons personal to him,* and not directed against him as an employee or because of his employment . . . ." Pennsylvania Workers' Compensation Act, 77 P.S. §411. (emphasis added)

Here, the injury to Diane Morse was caused by the act of Trudy Stovall, who may or may not have harbored personal animosity towards her victim. She did seek out and repeatedly shoot Diane Morse and did not injure any of the students. Thus, the plaintiff is not barred

---

7. It is noted that the United States Court of Appeals discussed the foreseeability of the criminal conduct of Trudy Stovall and decided that the school district and day care association could not have foreseen that allowing construction workers to use an unlocked back entrance for access to the school building would result in the murder of Diane Morse. *Morse v. Lower Merion School District,* 132 F.3d 902 (1997).

recovery by the Workers' Compensation Act because the injury to Diane Morse falls outside the definition of injury contained in the Workers' Compensation Act. In such cases, an "employee can pursue her common-law remedies against her employer, and attempt to prove that the employer was negligent in failing to take precautions necessary to prevent a foreseeable attack by the third party." *Hershey v. Ninety-Five Associates,* 413 Pa. Super. 158, 160, 604 A.2d 1068, 1069 (1992); see also, *Brooks v. Marriott Corp.,* 361 Pa. Super. 350, 522 A.2d 618 (1987). This specific exception has been narrowly construed to allow recovery only in cases where the third party's actions were motivated by a history of personal animosity toward that particular employee. *Mike v. Borough of Aliquippa,* 279 Pa. Super. 382, 421 A.2d 251 (1980). In the instant case, Trudy Stovall entered the building and sought out Diane Morse and shot her five times. Based upon the pleadings in the case, it would be possible to find that Trudy Stovall was motivated by personal animosity toward Diane Morse when she shot her. Therefore, it was appropriate for this court to deny the motion for judgment on the pleadings filed by the day care association.

## CONCLUSION

For the foregoing reasons, it was proper for this court to deny the motions for judgment on the pleadings filed by the additional defendants, the school district and the day care association.