Anderson, Appellant, *v.* Bushong Pontiac Company, Inc.

Argued April 24, 1961.    Before Jones, C. J., Bell, Musmanno, Jones, Cohen, Bok and Eagen, JJ.

*Harvey B. Levin,* with him *John J. Harding,* and *Bernstein & Bernstein,* for appellant.

*George J. McConchie,* with him *John F. Cramp,* for appellee.

OPINION BY MR. JUSTICE EAGEN, June 26, 1961:

This is an action for personal injuries, wherein the court below sustained preliminary objections in the nature of a demurrer to the complaint and entered judgment for the defendant. A subsequent request to amend the complaint was refused because the court concluded that the additional facts pleaded failed to state a cause of action. Separate appeals were filed in due course from the judgment entered and the subsequent order denying the right to amend.

The facts set forth in the amended complaint may be summarized as follows: The defendant was the owner and operator of a used car lot in Upper Darby, Pennsylvania, whereon many automobiles were displayed for sale purposes. On Friday, May 9, 1958, a fourteen-year-old boy stole the keys from a Pontiac sedan, one of the cars displayed on the lot. The theft was discovered and reported to the police on the same day. The boy who purloined the keys, and other boys of like age, made a habit of playing in and about the cars on the lot at the time the keys were taken and for some time prior thereto. The defendant failed to remove the car from the lot, or to use any other precaution to safely lock the car to prevent its operation, after the keys were stolen. On Sunday, May 11, 1958, while the used car lot was unattended, another young man also fourteen years of age, started the Pontiac sedan and drove it off the lot, using the keys that had been stolen two days previously. The car was operated in such a grossly negligent manner that it mounted a public sidewalk, struck the plaintiff, a pedestrian, causing extremely

serious injuries and necessitating the amputation of her right leg. Claiming that the negligence of the defendant was a proximate cause of the accident and her resulting injuries, this suit was instituted.

The facts pleaded stated a cause of action and the court erred in ruling to the contrary. The case is one for a jury's determination if the proof measures up to the allegata. A summary judgment should be entered on the pleadings only in a case that is free and clear from doubt: *Rogoff v. The Buncher Co.*, 395 Pa. 477, 151 A. 2d 83 (1959).

An automobile is a potentially dangerous instrumentality, particularly so, when in the control of an incompetent operator. The right to drive a car on the public highways of this Commonwealth is strictly regulated through a licensing system which prohibits children under sixteen years of age from enjoying this privilege. This is so because they are considered lacking in the maturity and the necessary ability to safely operate a device that can be one of death and destruction in the hands of the wrong person. All of this is common knowledge. All one has to do is to read the daily newspapers to know the proclivities of the younger generation in this regard.

Herein the defendant knew the keys of one of its cars located on an open lot had been stolen. Starting the motor by one who gained possession of the keys was a simple matter, even for a teenager. It aso had every reason to know that children of immature years frequented this lot and used it for recreational purposes at or about the time of the theft. Despite this knowledge, it saw fit to do nothing except report the theft to the police. The car was permitted to remain on an open and unattended lot. After the keys had been stolen and such fact was known, it did not require much imagination to realize that the car itself might well be next on the list. Without the car, the keys were in-

significant. To prevent the car's theft and operation required only a very simple mechanical operation. That it might well fall into possession and control of an incompetent teenager was not difficult to visualize. But no safety precautions ensued. Whether or not this constituted the exercise of reasonable prudence, under all of the circumstances presented, cannot be decided as a matter of law.

Restatement, Torts, §302(b) (1934) provides: "A negligent act may be one which: (b) creates a situation which involves an unreasonable risk to another because of the expectable action of the other, a third person, an animal or a force of nature." Comment i states: "If the actor knows or should know that the safety of the situation which he has created depends upon the actions of a particular person or a particular class of persons, he is required to take into account their peculiar characteristics of inattention, carelessness, *unskillfulness,* or even *recklessness* or *lawlessness* [1] if he knows or should know thereof." "Illustrations: 7. B leaves his car . . . [without locking the ignition] in front of a public school just before recess. B may be required to expect that some of the children will tamper with the car and set it in motion." Also §308 states: "It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others."

There is no case in Pennsylvania, within our knowledge, involving an identical factual situation. However in a California case, it was held that a cause of action was well stated where the automobiles on a used car lot were allowed to remain, with the keys avail-

---

[1] Emphasis supplied.

able in the ignition and where a person stole a car and injured the plaintiff. See *Murray v. Wright*, 166 Cal. App. 2d 589, 333 P. 2d 111 (1958), wherein the court said, at p. 113: "It is quite apparent that the instant case presents a factual situation far more serious than the parking of a single car on a city street as in the Richards case. Here it is alleged that defendants purposely left the keys in the ignitions of all vehicles parked on their lot which was at all times open and unattended, in order to encourage the general public to enter the lot, examine and operate the vehicles, and that they did so 'without regard for the fitness or competence of said general public so to do.' It is further alleged that this practice was a matter of common knowledge of the public in the vicinity of the lot, and of course the pertinent details regarding the area where the lot was located was something which could be developed further by plaintiffs at the time of trial."

The situation in the present case is akin to that of *Kuhns v. Brugger*, 390 Pa. 331, 135 A. 2d 395 (1957), wherein the defendant permitted a loaded pistol to remain available in an unlocked drawer of a piece of furniture in a room frequented by teenagers. Therein the court pointed out that a loaded pistol is a potentially dangerous instrumentality; that boys have the natural urge to touch and handle a gun; that one in charge of a dangerous weapon must use diligence commensurate with the risk; and, that under the circumstances the fact that the gun might be used by immature individuals to injure someone was reasonably foreseeable.

In *Ney v. Yellow Cab Co.*, 2 Ill. 2d 74, 117 N.E. 2d 74, 51 A.L.R. 2d 624, 630 (1954), we find this pertinent language: "The common law has established itself in the history of jurisprudence because of its flexibility in its recognition of and adaptation to changing times and mores; and, as adopted by our legislature, 'is a system

of elementary rules and of general declarations of principles, which are continually expanding with the progress of society, adapting themselves to the gradual changes of trade, commerce, arts, inventions, and the exigencies and usages of the country.' Amann v. Faidy, 415 Ill. 422, 114 N.E. 2d 412, 418; Kreitz v. Behrensmeyer, 149 Ill. 496, 36 N.E. 983, 24 L.R.A. 59. The increase in population and number of motor vehicles owned and operated in this country in the past few years is well known. The increase of casualties from traffic accidents is a matter of common knowledge and concern. The incidence of automobile thefts and damages and injuries resulting from such larcenous escapades has accordingly increased. Juvenile delinquency has reached proportions alarming to everyone. Three major wars during the lifetime of this generation have had their effect upon the mental attitudes, not only upon those who endured the physical suffering and mental anguish, but upon all our society. Comparative regard and disregard for the rights and property of others have not been unaffected. Automobiles, once considered a luxury, are now considered by many to be a necessity. The man who once walked a mile now drives a block. The speed and power of automobiles have increased to the extent that safety experts are now showing keen awareness of their potentials even in the hands of rightful owners and careful operators. Incidents of serious havoc caused by runaway thieves or irresponsible juveniles in stolen or 'borrowed' motor vehicles frequently shock the readers of the daily press. With this background must come a recognition of the probable danger of resulting injury consequent to permitting a motor vehicle to become easily available to an unauthorized person. . . ."

Retaining the car keys, in the first instance, until a customer came along would not constitute an intolerable burden. The burden is slight when weighed against

the utility of the act. Therefore, it is evident that the defendant's negligence, in leaving the keys in the car, started the chain of causation which resulted in the plaintiff's injuries.

Nor was the intervention of the boy-operator a superseding cause. Restatement, Torts, §448 (1934), states, "The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, *unless the actor at the time of his negligent conduct should have realized the likelihood that such a situation might be created thereby and that a third person might avail himself of the opportunity to commit such a tort or crime.*"[2] And §449, states, "If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby." Also in *Nelson v. Duquesne L. Co.*, 338 Pa. 37, 55, 12 A. 2d 299 (1940), we stated: "In Welser v. United Gas Improvement Co., 304 Pa. 227, 155 A. 561, we quoted with approval the following from two other jurisdictions: (1) ' "The act of a third person, intervening and contributing to a condition necessary to the injurious effect of the original negligence, will not excuse the first wrongdoer, if such act ought to have been foreseen. The original negligence still remains a culpable, direct cause of the injury" ': Lane v. Atlantic Works, 111 Mass. 136. (2) ' "Any number of causes and effects may intervene between the first wrongful cause and the final injurious consequence, and if they are such as might, with reasonable diligence, have been

---

2 Emphasis ours.

foreseen, the last result, as well as the first and every intermediate result, is to be considered in law as the proximate result of the first wrongful cause" ': Atchison, etc., R. R. Co. v. Stanford, 12 Kan. 354."

Herein, it was reasonably foreseeable that a teenager might steal the car and that the plaintiff, as a pedestrian, was within the class of persons endangered by the defendant's negligence. As was reiterated in *Kuhns v. Brugger*, supra, at pp. 350, 351, " 'Lastly, I cannot think that it was beyond the province of a jury to hold that he [the father] might have foreseen that the taking of the gun by the boy would not have been an improbable result of his seeing it, in a place where there was not a parent or a person in authority to prevent him. I am, therefore, of opinion that a jury might well have found that the defendant ought, under the circumstances, to have foreseen that the boy might take possession of the gun. But even this is not necessary, for, in my opinion, the liability of the defendant would be the same if he ought to have foreseen that *any* boy, as distinguished from this particular boy, might have seen and handled the gun; and having regard to the place in which it was placed, I think it would have been wholly impossible to have withdrawn from the jury the question whether he ought to have so foreseen. This alone, however, would not be enough. Ought he then to have foreseen that the boy *might*—I do not say *would,* but that he *might*—use the gun negligently? This appears to me to be the ultimate and crucial question in the case. . . . However, no one individual can determine what would be done by this hypothetical creature [a reasonable man] under any given state of circumstances otherwise than by his own experience, and, as the experience of one man usually differs from that of another, our law wisely says that what is "reasonable" is to be determined by the jury—that is, it is to be the

resultant of the, to a certain extent, varying opinions of twelve different persons . . . .' "

Finally, the question of proximate cause of an accident is almost always one of fact for the jury. As stated in *Nelson v. Duquesne L. Co.*, supra, at pp. 54, 55: "In section 453 of Pennsylvania Annotations to the Restatement of Torts, the following appears 'It is not uncommon to have a situation where there may be a reasonable difference of opinion as to whether the actor's conduct was a substantial factor in bringing about the harm, and it frequently occurs that where intervening forces have come into operation there may be a reasonable difference of opinion as to whether they were extraordinary or normal. If there is room for such a reasonable difference of opinion, the question of legal cause is for the determination of the jury [citing 14 Pennsylvania cases].' "

The judgment of the lower court is reversed. It is ordered that the amended complaint be permitted to be filed, with a procedendo.

Mr. Justice BELL dissents.