## Richards v. Local Union 57 of the
## I.H.C.B. J., AFL-CIO

*Stephen M. Feldman,* for plaintiffs.

*Joseph G. Manta, James M. Marsh* and *LaBrum & Doak,* for defendants.

DiBONA, J., May 19, 1971.—Before the court for resolution are motions for new trial and for judgment n.o.v. by defendants Burley and Union as well as a conditional motion for new trial by plaintiffs as against additional defendant City of Philadelphia.[1]

---

[1] In their brief in support of their motions, plaintiffs state: "The plaintiffs, who are satisfied to have judgments entered on all of the verdicts as they were rendered, filed a protective motion for a new trial against the City of Philadelphia, which the plaintiffs press only in the event that the motions of Burley and the Union

As so frequently occurs, the motions by the verdict losers assert a host of reasons why a new trial is required including the usual claims that the verdicts were against the evidence, were against the weight of the evidence, were against the law, and so forth.[2] In keeping with what actually happened at trial, however, only one issue raised by defendants in their motions need be considered at length, the remainder having been considered and rejected by the court: Were defendants Burley and Union guilty of negligence which proximately caused the accident and plaintiffs' injuries?

The applicable law is set forth in several decisions of the Supreme and Superior Courts: Anderson v. Bushong Pontiac, Inc., 404 Pa. 382 (1961); Liney v. Chestnut Motors, Inc., 421 Pa. 26 (1966); Allen v. Carr, 426 Pa. 597 (1967); Canavin v. Wilmington Transportation Co., 208 Pa. Superior Ct. 506 (1966); Dolan v. Phila. Trans. Co., 217 Pa. Superior Ct. 368 (1970). The legal principles have been stated most succinctly by Mr. Justice Roberts in Allen v. Carr, supra, at page 598:

". . . Liney [v. Chestnut Motors, Inc., 421 Pa. 26, 218 A. 2d 336 (1966)], in conjunction with Anderson

---

are granted." Inasmuch as this court is refusing the motions of Burley and Union, we accept plaintiffs' invitation and refuse their motion. It should be stated, however, that the motions against the city are without merit and would be refused even without the blessings of plaintiffs. The cases cited by plaintiffs in support of their claims of negligence by the city are inapposite, and the credible evidence accepted as fact by the jury shows that any negligence by the city was not causally related to the accident.

2 Defendants' motion for new trial consists of 27 points, some containing several elements. In their brief, and at argument, defendants press only four points and the remainder are, therefore, deemed abandoned.

v. Bushong Pontiac Co., 404 Pa. 382, 171 A. 2d 771 (1961), details the facts plaintiff must allege and prove to recover where defendant's automobile is stolen and the thief then negligently operates the stolen vehicle: (1) The defendant, or his employee, servant or agent, negligently so placed the automobile that it was foreseeable it would be stolen; (2) The defendant should have foreseen that the vehicle would be taken by an incompetent or careless driver."

In this case, the facts as found by the jury were as follows: Defendant Burley was a business agent of defendant union and, as such, had assigned to him the new Oldsmobile automobile which was involved in this case. Defendant union paid all expenses connected with the automobile and Burley used it seven days a week in connection with his union work. On examination by his own counsel, Burley testified that "my work week involved the entire week. Some times we had jobs on Sundays." The office manager of defendant union further testified that there were no restrictions on Burley's use of the union's Oldsmobile.

The business office of the union was located at 1367 Ridge Avenue, a location approximately two blocks away from the site from which the automobile was stolen. Burley testified that although the union office was not open to union members on Saturday or Sunday, he had keys to the office; similarly, the union's office manager testified that a person such as Burley had access to the office seven days a week and worked on Saturday and Sunday. Indeed, the office manager was himself working on the Sunday when the Burley union car was stolen. Finally, Burley testified that he had no specific times to be in the office and would go there as necessary to obtain office material, when he had appointments, and so forth.

On November 24/25, 1962, defendant Burley

parked the Oldsmobile at the intersection of Sixteenth Street, Ridge Avenue and Parrish Street in Philadelphia with the keys in the ignition, with blinker lights operating and with the driver's door unlocked. Three taprooms are located at the intersection of Sixteenth Street, Ridge Avenue and Parrish Street, and in the immediate vicinity of the intersection are 18 other bars as well as a private drinking club. Moreover, the area in question is the "turf" of one or more juvenile gangs and is an area having a high incidence of crime. The police officer called by defendants Burley and Union testified that he personally handled 100 to 150 auto thefts per year from the police district encompassing the intersection, that the highest incidence of crime occurs there on weekends between 8 p.m. and 4 a.m., and that the flow of traffic and the number of people on the streets in this area is extremely heavy until after closing time for the bars in the neighborhood. Another witness, the pastor of a church in the neighborhood, testified concerning the incidence of crime and drinking in the area and described the general conditions surrounding the intersection, including the area in which the union's Ridge Avenue office is located. Defendant Burley testified, of course, that he had been with the union since 1955 or 1956 and, as already indicated, was required to go to the Ridge Avenue office of the union to perform some of his duties as a business representative.

In the early morning hours of November 25, 1962, defendant Lester testified that he and defendant Butterfield found the Burley union car at the intersection in the condition described; namely, with lights on, keys in the ignition, door unlocked. Lester testified that he had earlier been drinking in one of the bars at the Sixteenth/Ridge/Parrish intersection and was of a mind to "joyride" in a car. He admitted that

he had no authority to drive the Burley/union car, indeed, he had never had a driver's license, but said that he was attracted to the car by the lights and was enticed to steal this particular car because of the presence of the keys in the ignition with an open door on the driver's side. Lester testified that he drove the car away with defendant Butterfield as a passenger, that they went "joyriding" through various parts of Philadelphia, that they drank more beer at a relative's house and that they thereafter resumed their "joyriding." While on the second "joyride," defendant Lester lost control of the car, being an inexperienced and unlicensed driver, and collided with the car in which plaintiffs were riding, thereby giving rise to the instant action.

In the charge, this court instructed the jury, inter alia, as follows:

". . . the parking of an automobile unattended, unlocked, and with the key in the ignition is not in and of itself negligence. . . . The only time it can become negligence is if the parking is done in an area or in a place where the person parking the car under those conditions knows or has reason to know that there is a possibility of the car being stolen. . . .

"If the car was stolen, if you decide the car was stolen from Burley's home, as I say to you, your verdict must be in favor of Burley and the Union. If you find the car was stolen at 16th and Parrish, and that that's where Mr. Burley left the car with the keys in the ignition, then we get into the question of whether or not he had reason to believe when he left the car there that the neighborhood was such that it was negligence to have left the car unattended.

"Now, Members of the Jury, as I have said to you, you have got to make the decision. If you decide the car was parked at 16th and Parrish, whether the ac-

tion of Burley in leaving this car unlocked and with the keys in the ignition created such an unreasonable risk of harm to other persons as to be expectable by him; that is, he as a reasonable man would have known or foreseen that parking the car in that area . . . was negligent, because a reasonable person would have realized that there was a risk of harm, that someone would come along, steal the car and injure someone. That's the test in this case, . . .

". . . if you conclude, Members of the Jury, that a reasonable person in sitting in Burley's position would have realized or would have understood the risk that somebody might come out of the bar and steal the automobile and get into an accident, then you may find that Burley was not only negligent, but that he could have foreseen the effect of the negligence, could have foreseen the events that occurred and, therefore, was wrong in law at least and was negligent and must respond in damages. That's the area in which you must make your test, Members of the Jury.

"Again, Members of the Jury, the test is not whether the act was criminal, but whether it was a foreseeable act; that is, could Burly have foreseen that with these bars open and so many bars in the immediate area and three bars right at the corner, that someone coming out of those bars intoxicated or close to intoxicated, might steal the automobile. . . .

"That is, Members of the Jury, if he had reason to believe that someone drunk or some incompetent driver might come out of the bars or off the street and steal the car and by reason of their intoxication or their inability to drive the car, run into someone and injure someone, the law says if he knew those facts or should have known them as a reasonable person, then he is responsible for the consequences of those acts."

Finally, after this extensive and detailed charge

which has, of course, been foreshortened by quotation, the court summarized the applicable legal principles with respect to the legal liability of defendants Burley and union in the following terms:

"So that with respect to Burley and the Union, if you find after you have reviewed all the evidence in this case, you have come to your conclusions of the facts and you find that the car was stolen at 16th and Parrish, if you find that it was unlocked and the key was in the ignition at that time, if you find that Burley by reason of the character of the neighborhood, the fact that he worked at Broad and Ridge, knew or should have known that there are people in that area, juvenile gangs or other people on the street or in the bars, who might come out and steal this pink '62 Oldsmobile, and that the person who might steal it might be drunk or might be incompetent, then it was foreseeable that this would occur and, therefore, he did not act as a reasonable man and, therefore, you may find that he was negligent and that the injuries sustained by the plaintiffs was the result of his negligence. And if that were your conclusion, then the plaintiffs would be entitled to a verdict at your hands.

"Now, on the other hand, if you find that a reasonable person would not have foreseen this, if you find that such an extraordinary chain of events; that is, such extraordinary or unforeseeable chain of events that a drunken Lester would come out, steal the car, go careening up 41st Street some five or six or seven hours later, and cause this accident, then you may conclude that a reasonable man would not have foreseen this chain of events and, therefore, there would be no liability.

"I say foresee this chain of events. You don't have to foresee the exact nature of what was going to occur; . . . If he could have foreseen that, acting as a reason-

able man, . . . some drunk or some incompetent driver might come out of the bar or off the street and take that automobile and drive it and because of the incompetency of the driver or the intoxication get into an accident, then it is a foreseeable, you may conclude that it's foreseeable and, therefore, negligent."

Acting within the parameters of these repeated explicit instructions, the jury found that defendant union, through its business agent defendant Burley, placed the Oldsmobile at the Sixteenth/Ridge/Parrish intersection; that that intersection is a place from which it was foreseeable the automobile would be stolen; and that it was foreseeable that the thief would be an incompetent or careless driver. See Allen v. Carr, quoted above. And, as the bare skeleton of the evidence given above indicates, there was ample evidence to support each and every one of these conclusions, including: (a) Burley was acting within the course and scope of his employment by defendant union when he used the automobile, especially in the vicinity of union headquarters; (b) Burley was personally acquainted with the nature of the neighborhood in which he was parking the union's car and knew or should have known that to leave this new automobile in this location with the door unlocked, with the keys in the ignition and unattended was an open invitation to habitues of the area to "joyride" in the car; and (c) such a "joyrider" would, whether because of intoxication or youth or any other of several reasons, be an incompetent driver.

For these reasons, this court has concluded that the jury's verdicts are proper under the applicable legal principles as announced by the Supreme and Superior Courts.

## ORDER

Now, therefore, this May 19, 1971, it is ordered that

the motions of defendants Burley and union for judgment n.o.v. and, in the alternative, for new trial are denied and judgment is hereby entered on the verdicts in favor of plaintiffs against defendants Willie Burley, Local Union 57 of the I.H.C.B.J., AFL-CIO, Ahmed Lester and William Butterfield in the following amounts: $6,008.30 for plaintiff Robert Richards; $3,500 for plaintiff Ruth Alberta Richards; $2,000 for plaintiff Robert Vincent Richards, Jr.; $10,000 for plaintiff Patricia Carolyn Richards; with interest from July 9, 1970, and costs of suit and judgment is further entered on the verdict of the jury in favor of defendant City of Philadelphia and against plaintiffs as well as in favor of defendant City of Philadelphia and against defendants Willie Burley and Local Union 57 of the I.H.C.B.J., AFL-CIO.