# Priese v. Clement

48

*Rodger L. Mutzel*, for plaintiffs.
*William D. March*, for defendants.

ORLOWSKY, *J.*, December 20, 1974—This action in trespass was commenced by plaintiffs, Gerhard Priese and Marilyn Jane Priese, husband and wife, to recover for personal injuries sustained by wife-plaintiff (hereinafter "plaintiff") on April 19, 1971. Plaintiff was injured when she was attempting to prevent operation of an automobile by defendant-wife, Marilyn Clement, who, at the time, was laboring under a mental deficiency. The vehicle had been parked on premises owned by both defendants.

After a three-day trial, on May 2, 1974, the jury returned a verdict in favor of plaintiff in the amount of $110,000 and in favor of plaintiff's husband in the amount of $10,000. The verdicts were rendered against both defendants. Defendants have filed timely motions for new trial and judgment n.o.v. which are now before the court for disposition.

This case involves a highly unusual factual situa-

tion that requires some elaboration, as well as some seldom-used principles of law.

In reviewing this case we must view all facts (in dispute) and all reasonable inferences therefrom in the light most favorable to plaintiff as the verdict winner: Fallon v. Penn Central Transp. Co., 440 Pa. 148, 279 A. 2d 164 (1971).

Viewed according to this principle, we set forth the following facts:

In December of 1970, plaintiff was hired by husband-defendant (hereinafter Mr. Clement) as housekeeper, cook and companion for defendants' three children. The wife-defendant (hereinafter Mrs. Clement) at that time was in the hospital recuperating from brain surgery. When Mrs. Clement was discharged from the hospital in February of 1971, plaintiff was requested by Mr. Clement to expand her duties to include the care and companionship of Mrs. Clement. Although plaintiff expressed concern that she had no experience as a nurse or nurse's aid, Mr. Clement assured her that no specialized training was necessary.

Mrs. Clement required supervision to the extent that she was mentally confused and not well oriented. She believed that she still lived in a house from which defendants had moved two years before and inquired almost daily as to when she was going home. In March of 1971, Mrs. Clement obtained keys to the family car and drove to her old home in the middle of the night, requiring Mr. Clement to bring her home. It was brought to plaintiff's attention on other occasions that Mrs. Clement, in the evening, would sit in one or the other of the defendants' two family vehicles. Mrs. Clement's children were worried for her welfare, since the cars were parked on a parking area leading to a sloped driveway next to the house. Mr. Clement was aware of the foregoing actions of his wife. As a result, the

keys to the vehicles were hidden from Mrs. Clement and she no longer had access to them. Mr. Clement also acknowledged that he had been warned by his wife's doctor about his wife's poor eyesight and her confusion and the fact that she should not be driving.

Because plaintiff had transportation difficulties, as part of her employment, she was permitted to use one of defendants' family cars, a Karmann Ghia. Plaintiff used this vehicle Monday through Friday and would leave the vehicle on defendants' premises at the close of her workday on Friday.

On Monday, April 19, 1971, plaintiff came to work at 8:00 a.m. She observed the Karmann Ghia parked with its back close to a barn on the parking pad to the side of defendants' home, facing downgrade toward the driveway. It was the first time that the vehicle was parked in this position on a Monday morning. It was not in the same position that plaintiff had parked it on the preceding Friday when she left the premises.

On every other Monday since plaintiff began her employment, the Karmann Ghia had been locked. One set of keys for the vehicle was kept at all times by plaintiff and the remaining set was retained by Mr. Clement. Mr. Clement admitted that he would have been the only person to have used the vehicle since the preceding Friday and that he would have been the one who parked the vehicle in the position described by plaintiff. On cross-examination, Mr. Clement acknowledged that there were several places on the parking pad where the vehicle could be parked and would not be subject to drifting downhill if the emergency brake were off.

The macadam parking area was approximately 20 feet wide and 60 feet long and located about 40 feet from the house. The parking area sloped downhill and connected to a driveway that exited onto

Glen Mills Road. The long, tree-lined driveway sloped downhill steeply for 350 feet, where it crossed a stone bridge, and then sloped up hill to Glen Mills Road another 350 feet.

On the Monday in question, at approximately 11:00 a.m., plaintiff, after doing the breakfast dishes, began to vacuum the living room. Mrs. Clement then informed plaintiff that she was going to walk out to the barn on the premises where she had gone on many prior occasions to visit the animals that were there.

Plaintiff followed Mrs. Clement out onto the porch and down the walk, staying about 20 feet behind her. After having passed the car, Mrs. Clement, suddenly and without warning, deviated from her entry into the barn and opened the door of the Karmann Ghia, which had been left unlocked. Plaintiff yelled to Mrs. Clement not to get into the car. Mrs. Clement ignored the warning and entered the vehicle, after pushing off with one leg to get the vehicle rolling down the driveway. Plaintiff ran after the car and caught up with it after it had traveled about one car length. The driver's door had been left open and plaintiff jumped on the side of the vehicle as it coasted downhill. Plaintiff tried to persuade Mrs. Clement to bring the vehicle to a stop and, at the same time, tried to reach the brake pedal with her own foot. Plaintiff had one hand on the steering wheel as the car went downhill and the other on the frame of the car. The vehicle began to veer to the left and it appeared to plaintiff that the vehicle would crash into a tree, the bridge, or go into the stream bed running under the bridge. Plaintiff stayed with the vehicle until it was approximately two car lengths from the bridge. She then straightened the wheels so the car would pass over the bridge and attempted to jump from the vehicle. However, plaintiff fell to the ground and the left

rear wheel of the vehicle ran over her left ankle, severely crushing the bones and causing internal damage to the ankle. The car ended up further down the driveway without damage or without any injury to Mrs. Clement.

Plaintiff was taken to Lankenau Hospital where her injuries were diagnosed as a trimalleolar fracture and dislocation of the left ankle, with diastasis. The next day an operation on the ankle was performed. The following July, plaintiff re-entered the hospital for the removal of a Webb bolt that had been inserted in the prior operation. Plaintiff has since developed traumatic arthritis in the fracture site and has been in continual pain and discomfort. Doctor Brandfass, plaintiff's treating orthopedic specialist, testified that the arthritis in the ankle will progressively increase causing more pain and stiffness, more swelling and less ability to function with the ankle. Dr. Brandfass stated that plaintiff's condition was permanent, she would continue to limp, should refrain from working and, finally, that some future additional surgery might be required. At the time of trial, plaintiff's medical expenses were $2,993.38. Future medical bills for an ankle fusion were approximated at $2,600. Defendants offered no medical testimony to dispute the nature or extent of plaintiff's injuries or the permanency thereof.

Plaintiff also presented a substantial claim for loss of past earning capacity and impairment of future earning capacity. At the time of the accident, plaintiff was earning $125 per week from her services with defendants. In addition, she worked evenings as a tutor, averaging $25 per week. Since the accident, plaintiff has been unable to obtain employment because of the pain and discomfort she experiences after walking on the ankle. Dr. Brandfass concluded that the nature of plaintiff's

injuries would limit her ability to be gainfully employed in the occupations in which she previously engaged.

In their motions, defendants set forth 24 grounds of error, almost all of which relate to portions of the court's charge to the jury. Initially, it should be noted that no claim has been made that the verdicts are excessive.

In examing defendants' allegations of error in the court's charge to the jury, the charge must be examined in light of the following principles:

(1) When the propriety of certain portions of the court's instructions to the jury are challenged, the instructions must be read in their entirety. Error in a charge, if in fact it does exist, cannot be predicated upon isolated excerpts from the charge if, when the entire charge is examined, it is revealed that a true and correct charge was given: Sherman v. Manufacturers Light and Heat Co., 389 Pa. 61, 132 A. 2d 255 (1957); Reading Motor Sales, Inc. v. United States Fidelity and Guaranty Company, 439 Pa. 149, 266 A. 2d 687 (1970).

(2) The doctrine of basic and fundamental error is not a ground for consideration on appeal of allegedly erroneous jury instructions. There must be a specific objection to the jury instruction in order to preserve the point for appeal: Dilliplaine v. Lehigh Valley Trust Company, 457 Pa. 255, 322 A. 2d 114 (1974).

(3) It is the duty of counsel to advise the court in writing in advance of the charge of the controlling law and specific requests for jury instructions. When counsel fail to do this, but wait until the charge is completed and then make oral requests, they cannot complain if their requests are not answered as fully and carefully as they might otherwise have been: Wally v. Clark, 263 Pa. 322, 106 Atl. 542 (1919); Pa. R.C.P. 226.

Defendants' numerous allegations of error can be combined into four major areas:

## I. CONTRIBUTORY NEGLIGENCE OF PLAINTIFF

Defendants contend "that the foremost weakness in the charge was a failure to properly explain defendants' theory of contributory negligence."

At the pre-trial conference in this case, defendants set forth their contention that: "Plaintiff, who had been employed to supervise Mrs. Clement, was injured when she jumped from defendants' auto after trying to prevent Mrs. Clement from coasting the same down the driveway." The major theory of contributory negligence was that plaintiff acted unreasonably under the circumstances in attempting to stop the vehicle and that she acted rashly in supposedly attempting to rescue Mrs. Clement from peril. No real complaint is made that the court did not properly and fully charge on contributory negligence generally or on the theory of contributory negligence as it applied to the doctrine of rescue.

In addition, defendants argued to the jury that plaintiff was negligent in failing to properly supervise Mrs. Clement and in failing to move the car from a position of peril and failing to check to make sure the car was locked. It is this latter theory of contributory negligence that defendants' claim was not properly explained by the court.

Admittedly the court devoted less time in the charge to this second theory than it did to the first. However, a reading of the total charge reveals more than an adequate explanation of defendants' second theory of contributory negligence, and that such explanation did not contain anything unfair or misleading.

For example, the court, in reciting agreed facts, stated that plaintiff "had the duty, among other things, of supervising the actions and care of Mrs. Clement," and that plaintiff was her "custodian." The question of whether or not the supervision was reasonable was properly left for the jury to decide. Furthermore, the jury was instructed to consider plaintiff's knowledge of Mrs. Clement's mental deficiency and her propensity to use the car in judging whether plaintiff was herself negligent in this situation. Additionally, the court charged that, if plaintiff's own negligence allowed Mrs. Clement to place herself in a position of peril, inviting the rescue, such negligence would preclude recovery by plaintiff. The court charged as follows:

"On the other hand, if the third person's peril is due in part to the plaintiff's own negligence, such negligence is a contributing factor in producing any harm which she sustains in attempting to rescue the third person and therefore is a bar to her recovery against the defendant whose negligence also contributed to such harm."

At the conclusion of the charge, defense counsel requested further elaboration on his theory of plaintiff's contributory negligence as to the lack of supervision. Thereafter, the court did exactly as defense counsel requested and gave the following additional instructions to the jury:

"The defendants in this case also charge that the plaintiff was guilty of contributory negligence, not only in reference to stopping the vehicle, but also in the method of her care and custody or companionship of Mrs. Clement.

"If you find that the evidence shows that the plaintiff undertook the care and protection of the defendant, Mrs. Clement, and that she was aware of the defendant's uncommon desire to get in the

automobile, it is up to you to determine whether or not, in such an undertaking, she agreed to employ and use the care and skill of those commonly possessed and exercised by people in like employment according to the circumstances and she assumed the risk of injury by her ward or patient if, by the exercise of due care and skill she would have prevented the injury."

Ironically, this additional instruction was precisely one of the few points for charge submitted by defendants and their only point requested on this theory of their case. Certainly, a court cannot be expected to draft elaborate points for charge for counsel at the conclusion of a lengthy charge, especially when such counsel are in a position to have carefully studied the legal aspects of the case in advance of trial and timely submit points in support thereof.

Moreover, the additional instruction given by the court was the last instruction the jury received before the case was turned over to them for their deliberation. Hence, defendants reaped the advantage of having their theory of plaintiff's contributory negligence presented as the last thought about the case to enter the minds of the jury.

In connection with the contributory negligence issue, defendants next challenge another excerpt of the charge which stated: "And there appears to be no question in this case that Mrs. Clement did, in fact, start the car moving down the incline and the car did, in fact, travel some distance, and *that Mrs. Priese made an effort to stop it to prevent harm to Mrs. Clement.*" (Emphasis supplied.) Defendants contend that whether or not plaintiff made an effort to stop the vehicle in order to prevent harm to Mrs. Clement was a jury question and that the italicized portion of the charge actually directed the jury as to what the findings should be on that issue.

We can find no invasion of the province of the jury on this point, especially considering the totality of the charge. First of all, the statement of agreed facts from the pre-trial conference is tantamount to an admission on this point. Furthermore, plaintiff's testimony that she tried to halt the car because she was afraid Mrs. Clement would be injured was uncontradicted. At no time during the trial did defendants ever argue or suggest that plaintiff attempted to stop the car for any reason other than to prevent harm to Mrs. Clement. Where there is no genuine question on the issue, either because that facts have been agreed to (Levine v. Giant, Inc. 197 Pa. Superior Ct. 339, 178 A. 2d 802 (1962)), or because insufficient evidence has been produced to raise the question (Auerbach v. Philadelphia Transportation Company, 421 Pa. 594, 221 A. 2d 163 (1966)), the court should not instruct the jury on the issue.

The real issue in this case, and the one vigorously challenged by defendants, was whether or not plaintiff was justified in believing that Mrs. Clement was in real peril of harm and that the attempted rescue was reasonable under the circumstances. The trial judge fully outlined all the factors that the jury was to assess on this important issue:

"What factors should you consider in determining whether or not the plaintiff acted rashly or with extreme recklessness in this case? Whether a plaintiff is acting reasonably in exposing herself to a particular risk in order to protect a third person from harm depends upon the comparison between the extent of the risk and the gain to be realized in encountering it, which includes two things: First, the likelihood that the rescue will be successful and, second, the gravity of the peril in which the third person has been placed. It may be reasonable for a plaintiff to take a very considerable risk in

order to save a human life. However, the risk of an attempted rescue may be so grave, or the chance of its success so slight as to make it unreasonable to attempt, even though a human life is at stake. The less the danger of the third person, the less the risk which plaintiff may reasonably encounter."

The liability portion of the court's charge comprised 39 pages. Contributory negligence was mentioned on at least 14 of these pages. When the entire charge of the court is reviewed in context, we are convinced that the question of contributory negligence was thoroughly covered and the legal principles related thereto were accurately stated. Defendants' contention that the charge overemphasized plaintiff's side of the case and was not impartial is devoid of merit.

Under the facts of this case and the law enunciated in the charge, the jury was given the clear right to find plaintiff guilty of contributory negligence as a result of a lack of proper supervision or as a result of an improvident rescue attempt. Hence, we find no error in the court's charge on the issue of contributory negligence.

## II. MR. CLEMENT'S NEGLIGENCE

Defendants contend that the court erred in permitting the jury to find that Mr. Clement, husband-defendant, could be found negligent. They argue that, under the facts of this case, to hold the husband responsible for the injuries to plaintiff following an act of Mrs. Clement imposes on him a standard of care not yet required by our decisional law regarding the management of one's personal property.

Should the issue of Mr. Clement's negligence have been withdrawn from the jury and a verdict directed in his favor?

"The fundamental principle underlying the right of withdrawal of cases from the jury is that a case may be withdrawn only in clear cases in which as a matter of law the jury would not be legally justified in arriving at a verdict in favor of the party against whom the withdrawal is made.": 6 Standard Pa. Practice §14, p. 259; Wisniewski v. Great A. & P. Tea Co., 226 Pa. Superior Ct. 574, 323 A. 2d 744 (1974). The test is not whether the court would have found liability, but rather whether the jury could legally impose liability based on all the facts in the case.

There is no doubt that the facts of this case raised serious questions of foreseeability and causation as to the negligence of Mr. Clement. The trial judge went to great lengths to elaborate on all these important principles and illustrated with examples.

However, the question of proximate cause of an accident is almost always one of fact for the jury: Anderson v. Bushong Pontiac Company, Inc., 404 Pa. 382, 171 A. 2d 771 (1961). In the Anderson case, supra, a 14-year-old boy, using the ignition keys previously stolen by another, drove an automobile from defendant's auto sales lot and struck a pedestrian. Liability of defendant lot owner to the pedestrian was upheld. Does not the case at bar present the same type of foreseeability problem?

In the case of Glass v. Freeman, 430 Pa. 21, 240 A. 2d 825 (1968), the driver of a tractor was guilty of negligence where he left the tractor unattended with the engine running when the driver knew his seven-year-old son was playing in the vicinity. The court stated that a seven-year-old boy would be attracted by the tractor and might imitate his father by driving the tractor and cause injury to the plaintiff, who was engaged in blacktopping a parking lot. It was foreseeable to the father, who had been driving the tractor and had knowledge that the boy was

in the area. The court rejected the argument that the son's actions in operating the tractor were a superseding cause.

The instant case is strikingly similar if we consider the mentally deficient Mrs. Clement in the same posture as the seven-year-old son. In fact, in the subject case, Mr. Clement had advance knowledge of his wife's propensities to operate the car. Furthermore, he had taken the keys to the car and hidden them from his wife. Was the removal of the keys the sole duty of Mr. Clement? Did he have the further duty to make sure the car was also locked? Was his duty, if any, fulfilled by hiring a custodian? Under the facts of this case, all of these issues were properly left to the jury to decide under proper instructions.

We cannot say as a matter of law that Mr. Clement could not be found negligent. The jury was properly left with that decision.

Defendants further contend that the court misinformed the jury on what constituted negligence. It is claimed that the court told the jury that parking a car at the top of an incline and leaving it unlocked under the circumstances of this case was a negligent act. Again, this contention is attempted to be supported by taking one short paragraph of a lengthy charge out of context. The court charged extensively on intervening, superseding, concurrent and proximate causes, as well as the whole general area of foreseeability. For example, the jury was instructed:

". . . The question of causation is squarely before you for a determination from the evidence, bearing in mind that the plaintiff cannot recover unless the defendants were guilty of negligence which was the proximate cause of the injuries . . ." and

". . . In other words, if the plaintiff would have suffered hurt in any event, regardless of whether or

not the defendant was negligent—again this applies particularly to Mr. Clement—then the defendant could not be held responsible . . ." and

". . . If the defendant committed a negligent act which did no more than set the stage for what subsequently occurred, and if the negligence of others then intervened and was the distinct, unrelated and efficient cause of the plaintiff's hurt, the defendant—in this case Mr. Clement—then could not be held liable . . ." and

". . . If an actor's conduct, in this case the actions by Mr. Clement in leaving the car parked on an incline and left unlocked, if you find those facts to exist, created or continues a situation which is harmless if left to itself, but is capable of being made dangerous to others by some subsequent action of a human being, in this case Mrs. Clement because of her condition, and not appreciating the danger of opening the door and starting this car downhill, then the actor's negligence depends upon whether he, as a reasonable man, should recognize such action or operation as probable . . ."

Finally, after summarizing plaintiff's contentions on Mr. Clement's negligence, the court charged:

". . . Whether or not this conduct of defendant took place and, if so, was such conduct of the defendant negligent and the proximate cause of plaintiff's injuries will be your decision based on the law as I give it to you in this charge . . ."

The total charge of the court, as evidenced by only the few foregoing examples, is the best answer to defendants' contention that the court's instruction was equivalent to declaring Mr. Clement negligent as a matter of law. The issue of negligence was put squarely to the jury and we can find no usurpation by the court of the jury's functions.

Next, defendants have excised from the charge the words, "now there is some conflict in the testimony that was produced during the course of this trial, but as I see it, it is not of any great moment." They claim this was an invasion of the jury's province. Put in proper context, the court charged:

". . . Now, there is some conflict as to the testimony that was produced during the course of this trial, but as I see it, it is not of any great moment. It is your sole duty, however, to reconcile the conflicting statements and decide which is accurate and which in your judgment reflects the true picture in this case.

"I believe that both counsel have pointed up in their arguments to you what they believe to be the facts that are in conflict, and, obviously, it is your duty to resolve the conflict if you find any conflict to exist in this case. That, of course, means that you are to pass upon the credibility of all the persons who have testified and decide where the truth lies."

A review of the total charge makes it evident that the jury was more than amply charged that they and they alone were the triers of the facts of the case and had to resolve all conflicts as part of their jury duty.

Defendants continue to excise the charge by finding fault with the court's phrase: "In fact, he kept the car locked," when referring to one of the possible elements of negligence attributable to Mr. Clement. They claim there was no such evidence in this regard offered by plaintiffs. Again, the phrase is taken out of context. The phrase was used when summarizing plaintiff's contentions. Obviously, there was ample evidence to prove the car was unlocked, otherwise the door could not have been easily opened. Nevertheless, the court did not treat as an admitted fact that the car was unlocked. For example, the court, in commenting on the possible

negligence of Mr. Clement, stated: ". . . in leaving the car parked on an incline and left unlocked, *if you find those facts to exist. . . .*" (Emphasis supplied.)

Hence, the jury was left with making the final decision as to whether or not the car was left unlocked and left unlocked by Mr. Clement.

## III. THE NEGLIGENCE OF MRS. CLEMENT

Defendants in their written motions contended that "The Court misstated the Rule of Law regarding mental deficiency as it relates to culpability for the actor's torts." However, defendants do not seem to press this point in their brief. Since the point has been raised, we must comment that, after review, we find that the court did thoroughly and accurately state the correct rule of law.

The law is that "mental deficiency [short of insanity] does not relieve the actor from liability for conduct which does not conform to the standard of a reasonable man under like circumstances.": Restatement 2d, Torts, §283 B. "A person with a mental deficiency is civilly liable for his torts; he is liable to bear the consequences of his infirmity as he is liable to bear his misfortunes, on the principle that where a loss must be borne by one of two innocent persons, it shall be borne by him who occasioned it.": Lancaster County National Bank v. Moore, 78 Pa. 407, 21 AR 24 (1875); Wolf's case, 195 Pa. 438, 46 Atl. 72 (1900).

In this case the evidence was uncontradicted that Mrs. Clement was laboring under a mental deficiency, but that she was not insane. Hence, the court correctly instructed the jury that Mrs. Clement was held to the standard of conduct of a reasonable person even though she was mentally deficient.

Defendants raise two further allegations of error

related to the negligence of Mrs. Clement. First, it is contended that the court's charge equated "a person with a known mental deficiency" with a person in peril or apparent position of harm. An analysis of the charge on this point does not support this contention. All that the court did, and properly so, was to tell the jury that they should consider the mental condition of Mrs. Clement in judging whether plaintiff acted reasonably in attempting to rescue Mrs. Clement, as well as in judging whether Mrs. Clement acted reasonably under the circumstances. In other words, the known mental condition of Mrs. Clement and her past conduct with the car were factors that the jury should appraise in determining whether the actions of the parties were reasonable under the circumstances. The jury could have concluded that Mrs. Clement was competent to drive in spite of the admitted mental deficiency.

Likewise, we find no error in the court's statement that: "An automobile is a potentially dangerous instrumentality, particularly so, when in the control of an incompetent operator.": Anderson v. Bushong Pontiac Company, supra. Whether or not Mrs. Clement was competent to drive or even if her ·mental competency affected the situation at all were left in the proper domain of the jury.

## IV. SUMMATIONS TO JURY

During defense counsel's summation to the jury, he argued that, in 1972, a pre-trial demand was made on plaintiff to produce her income tax records and that they were not produced during that period of time. He then argued that the jury should take this fact into consideration in assessing the validity of plaintiff's claim for impairment of earnings. On rebuttal, plaintiffs' counsel answered defendants' argument by saying that counsel for defendants

had the equal opportunity to produce tax records by subpoena from Internal Revenue Service. At that point, defendants' counsel objected that no such evidence was in the record. After a side-bar conference, the court refused to sustain the objections, but ordered counsel for plaintiff to make no further argument on the point.

Defendants claim it was error to permit this argument to stand and this error was further compounded when the court refused to give any additional instruction on burden of proof at the conclusion of the charge.

We find no merit in either of these contentions. The court's charge on burden of proof on damages was accurate and substantial and we find no reason that required any further elaboration on that point.

Furthermore, whether a lawyer's argument to the jury transgresses the bounds of legitimate advocacy is primarily for the discretion of the trial judge and this exercise of discretion will not be interfered with unless the record manifests that it was clearly abused: Abrams v. Phila. Suburban Transportation Company, 438 Pa. 115, 264 A. 2d 702 (1970); Leasure v. Heller, 436 Pa. 108, 258 A. 2d 855 (1969). In this case, counsel for plaintiffs was merely answering arguments that had been raised by counsel for defendants in summation. We find no abuse of discretion here. Moreover, defendants had ample opportunity to obtain the income tax records, either through a motion to produce, by subpoena or interrogatories. In this case, they took none of the foregoing actions. We fail to see how defendants would be entitled to raise an adverse interest type argument by plaintiffs' failure to come to court with her tax records when they, themselves, could have obtained access thereto through legal means. See Bentivoglio v. Ralston, 447 Pa. 24, 288 A. 2d 745 (1972).

66

Defendants raise several other allegations of error concerning specific excerpts of the court's charge. Again, all of these excerpts are either taken out of context or no objection to that portion of the charge was made, which is required to preserve such issues for appeal: Incollingo v. Ewing, 444 Pa. 263, 282 A. 2d 206 (1971); Dilliplaine v. Lehigh Valley Trust Company, supra.

Especially considering the numerous allegations of error, we have thoroughly reviewed the entire charge of the court. We are convinced that all issues were comprehensively, accurately and fairly submitted to the jury without prejudice to defendants. We find no error that would entitle either of defendants to a new trial, and further that the jury's verdict is supported by the evidence.

Accordingly, we enter the following

## ORDER

And now, December 20, 1974, after consideration of the briefs of the parties by the court en banc, it is ordered that defendants' motions for a new trial and judgment n.o.v. are hereby dismissed.