# Landis v. Harristown Development Corporation

*Patrick F. Lauer Jr.* and *Lee C. Swartz,* for plaintiffs.

*John A. Statler,* for defendant Harristown Development Corporation.

*Jonathan M. Crist,* for defendant H.B. Alexander.

SCHAFFNER, *J.*, September 15, 1989 — Plaintiffs, through a complaint and an amended complaint, state a claim against defendants based on negligence. Defendants each have filed preliminary objections and one of the objections is a demurrer.

The case is based on the tragic murder of plaintiffs' decedent, Anne S. Landis, on May 18, 1988 in a construction site on Market Street in the City of Harrisburg. The land where the criminal act occurred was under the control of Harristown Development Corporation, and defendant H.B. Alexander & Son Inc. was the entity retained by Harristown to make the improvements on the subject site. The pleadings state that the homicide occurred within the construction site, behind a four-foot-high barricade, the gates to which were not secured, and further, it is alleged that the crime was committed

with a two-by-four piece of lumber that was obtained on the construction site.

Plaintiffs allege basically, through many paragraphs, that defendants were negligent in not providing a secure construction site, in not having it patrolled by security officers, by not having it sufficiently lighted, and by not having an eight-foot wall around it, as mandated, plaintiffs allege, by a Harrisburg City ordinance. Plaintiffs allege that defendants were fully aware that the site was a dangerous one, that the criminal element was in the area, that crimes had occurred in this area and that defendants had created an attractive nuisance and an induced environment for criminal activity to occur.

Defendants simply allege that no duty existed on the part of defendants to protect a person from the criminal acts of another.

The matter was briefed and presented at argument to the court in accordance with our local rules.

Preliminary objections in the nature of a demurrer admit as true all well and clearly pleaded material factual averments and all inferences fairly deducible therefrom. Conclusions of law and unjustified inferences are not admitted by the pleadings. Starting from this point of reference, the complaint must be examined to determine whether it sets forth a cause of action which, if proved, would entitle the party to the relief sought. Where a complaint fails to set forth a cause of action, a preliminary objection in the nature of a demurrer is properly sustained. *Greenspan v. United Services Automobile Association*, 324 Pa. Super. 315, 471 A.2d 856 (1984).

There are four basic requirements which must coexist for a defendant to become liable to another when the legal theory of the plaintiff is negligence:

(1) A duty or obligation recognized by the law, requiring the actor to conform to a certain standard

of conduct, for the protection of others, against unreasonable risks.

(2) The failure on the actor's part to conform to the standard required.

(3) A reasonably close causal connection between the conduct and the resulting injury.

(4) Actual loss or damage resulting to the interests of another.[1]

Counsel have submitted much to us, for our consideration, relative to the duty owed by defendants, and the failure of defendants to adequately perform that duty. Little has been submitted by anyone on the issue of causation. That, to us, is the appropriate beginning point and, after consideration, the ending point to this case.

If we concede, for purposes of argument, that defendants were negligent and did fail to conform to a standard of care owed plaintiffs' decedent on any of the bases plaintiffs suggest, we are left with the question as to whether, under Pennsylvania law, a jury could find such conduct a substantial factor in bringing about a man's act of bludgeoning another to death in the middle of the night. The answer can only be "no." That answer is both an intuitive one and also the one we reach after study.

The first question is whether a jury must be allowed, in any event, to consider the "cause" issue. While the "legal cause" issue is normally a jury matter, it is not always so. When the facts of a case are not disputed, and we are assuming plaintiffs will prove the underlying factual basis of this case, and the remoteness of injury from negligence is clear, the court should make the decision that legal causation does not exist. *Liney v. Chestnut Motors Inc.*, 421 Pa. 26, 218 A.2d 336 (1966).

---

1. Prosser & Keaton on the Law of Torts (5th ed. 1984).

The test usually enunciated by courts for determining when the court, not the jury, should decide the causation issue is: When reasonable minds could not differ as to the result, then the issue is not for the jury, but for the court. *Alumni Association v. Sullivan,* 369 Pa. Super. 596, 535 A.2d 1095 (1987); *Askew by Askew v. Celler,* 361 Pa. Super. 35, 521 A.2d 459 (1987).

This is probably an ingenuous rationale because the test is not really whether reasonable jurors could or could not agree, but whether a judge trying the case or appellate judges reviewing it feel so clearly that an act may not be a "legal cause" under then current negligence law that they would not give the case to a jury to consider. That is an appropriate method of resolving the matter because "proximate cause" is not a fact concept, but a legal determination of when an actor should be considered for a penalty because of injury resulting from what he did. Thus, an actor can "cause" a result, a cause in fact, and have the "cause" not be a "proximate" or "a substantial factor in bringing about victim's harm." Restatement (Second) of Torts §431; *Ford v. Jeffries,* 474 Pa. 588, 379 A.2d 111 (1977). As the Superior Court stated in *Alumni Association v. Sullivan, supra:*

"Even where harm to a particular plaintiff may be reasonably forseeable from the defendant's conduct, and that conduct is the cause-in-fact of the plaintiff's harm, the law makes a determination that, at some point along the casual chain, liability will be limited. The term 'proximate cause,' or 'legal cause' is applied by courts to those considerations which limit liability, even where the fact of causation can be demonstrated. Because of convenience, public policy, or a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain

point as no longer a 'proximate' or 'legal' consequence naturally flowing from the wrongdoer's misconduct."

The whole issue of legal causation is a complex one that has been developing in United States jurisprudence for a long time. See Justice Cardozo's opinion in *Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99 (1928). Whether or not an act or acts are legal causes of an incident are conceptual questions based on public considerations, and are certainly not measurable, calcuable, standards. Because of the difficulty, our courts, across the nation, have gone through many labors in an effort to develop a yardstick for everyday courtroom use and easy application and the law has labored mightily and fretfully because it is difficult to create a finite tool to measure an infinite concept. A 12-inch ruler, thus, can no more measure sound than the two words "proximate cause" can, of themselves, determine when the changing conscience of our nation urges one party to pay another for an injury received. Thus, "proximate cause" has been discarded,[2] "forseeability" seem to have been rejected,[3] and "the but for test" also has limitations.[4]

Our question, therefore, is whether any appellate decisions of Pennsylvania, which direct us, have determined, in a fact situation parallel to the present one, that a jury may impose responsibility for a murder on a property manager. Plaintiffs cite to us *Anderson v. Bushong Pontiac Co. Inc.*, 404 Pa. 382, 171 A.2d 771 (1961); *Ford v. Jeffries, supra;* and *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987).

---

2. *Rodgers v. Yellow Cab Co.*, 395 Pa. 412, 147 A.2d 611 (1959).

3. Restatement (Second) of Torts §435.

4. Prosser & Keaton on Torts, *supra,* at 265-8.

In *Anderson,* a young person stole the keys from one of the cars situate on defendant's car lot. The car lot was frequented by youth and the proprietors knew that the keys had been stolen, reported the theft, but did not do anything further. The car was not removed from the lot nor was it locked. Shortly after the theft the car was taken by a young person, driven off the lot, and the plaintiff in the resulting accident was severely injured. The court determined that the issues of forseeability and proximate cause were for the jury and that the lower court's act in sustaining the demurrer was error. This case, wherein the ultimate injury could not have occurred had the defendant not been negligent, does not instruct us that a jury should be allowed to consider a property owner responsible for a homicide.

In *Ford v. Jefferies, supra,* the trial court granted a compulsory nonsuit in a claim for damages alleging the defendant's negligent maintenance of his house. The defendant landowner did not maintain the home, it was vacant, rodents and dogs infested it, and one fire had broken out in the house, threatening the plaintiff's home but five or six feet away. A second fire in the defendant's home, without the defendant having done any necessary maintenance or taking any precautionary measures despite being advised and requested to do so, destroyed the plaintiff's home. Ultimately the Supreme Court held that the nonsuit was improperly granted and that the issues were for the jury. Again, this case provides no instruction to us as to when a legal connection between a property owner's lack of maintenance and a wanton murder should be found to exist. In *Ford,* as in *Anderson,* the victim's ultimate injury would not have occurred had the defendant's negligent conduct not set in being the causation. In the present case, we cannot say that

defendants' negligence started the causation stream which ended in the murder. That causative stream started, we must assume, when plaintiffs' decedent and the murderer met and was generated from interaction between those people.

Finally, in *Mascaro,* a juvenile escaped from a youth study center and committed a burglary and vicious rapes. It was alleged that the detention facility was negligently maintained and that this negligence permitted the criminal to escape. Further, the criminal had escaped from other institutions and had committed other rapes. Once again, the victim would have suffered no harm in the *Mascaro* case if the defendant had not been negligent. It was the negligence in the maintenance of the facility when the facility housed a vicious criminal whose propensities were known that resulted in the ultimate injuries. This case, as the others, does not indicate to us that in the present case we should permit a jury even to consider that, under present Pennsylvania law, the present defendants could be found to have caused the murder.

Of the cases cited to us by defendants, *Chapman v. City of Philadelphia,* 290 Pa. Super. 281, 434 A.2d 753 (1981); *Vann v. Board of Education of the School District of Philadelphia,* 76 Pa. Commw. 604, 464 A.2d 684 (1983); *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742 (1984); *Casey v. Geiger,* 346 Pa. Super. 279, 499 A.2d 606 (1985); and *Glick v. Old Town Lancaster Inc.,* 369 Pa. Super. 419, 535 A.2d 621 (1987); and *Glick v. Martin and Mohler Inc.,* 369 Pa. Super. 428, 535 A.2d 626 (1987), deal with criminal attacks upon the plaintiffs and negligence claims then brought against others. In *Chapman,* the plaintiff was attacked on the platform of a railroad station, in *Vann* the plaintiff was attacked while walking on the sidewalk adjacent to a school,

and in *Feld,* Mr. and Mrs. Feld were accosted in the parking lot of their apartment complex by criminal defendants and taken away. In *Casey,* the plaintiff was criminally attacked in a borough park and in the *Glick* cases, similar in factual context to the present one, the plaintiff was abducted by a criminal defendant, taken into an abandoned building and attacked.

In all of these cases the reviewing court found that the plaintiff had not stated a cause of action against the named defendant. In these cases the focus of the court was on the issue of whether or not there was a duty owed by the defendant to the injured plaintiff, not whether or not the jury should have been permitted to find a "legal" cause between the acts of the defendant and the plaintiff's harm. Nonetheless, the cases point out the disapproval of the appellate courts that decided these cases on the concept on linking, in negligence, a named defendant to a criminal third party.

We are satisfied that the demurrer of defendants should be sustained.

Accordingly, we.enter the following

## ORDER

And now, September 15, 1989, the demurrer of defendants is sustained and plaintiffs' complaint is dismissed with prejudice.